Appellees sued appellant for actual damages resulting from the alleged improper conduct of one Brigham, employed by appellant. The claim was made that Janie B. Anderson, wife of George B. Anderson, while proceeding along Main street in the town of Denison, was assaulted by said Brigham, by him arrested, subjected to indignities, and her hand bag forcibly taken from her and searched, and she imputed to be a thief, whereby she suffered distress of mind at the time and some physical pain thereafter, and all of which was done at the instance and on behalf of appellant. Appellant pleaded the general denial. Upon trial a jury awarded appellees $850, upon which the court entered judgment.
Appellant's first assignment of error complains of the refusal of the court to instruct the jury to return a peremptory verdict for appellant on the ground that the undisputed evidence disclosed that Brigham was a policeman, and acting as such at the time Mrs. Anderson was arrested, etc., and for whose acts appellant was not responsible.
Prior to a discussion of the facts in the case, it may be said that it is settled law that the master is liable for the tortious acts of his servant when it is shown that the master has invested the servant with authority or made it his duty to act in respect to the business in which he is engaged, when the wrong is committed, if committed, in the course of his employment. "In such a case the master will be deemed to have consented to and authorized the act of the servant, and will not be relieved of liability, although the servant abused his authority or was reckless in the performance of his duty or inflicted an unnecessary injury in executing his master's orders." Southwestern Portland Cement Co. v. Reitzer, 135 S.W. 241; Railway Co. v. Parsons, 102 Tex. 157,113 S.W. 914, 132 Am.St.Rep. 857. Under the general rule just stated, it has been held that a corporation is responsible for either a wrongful assault or unlawful arrest "made or caused to be made by a detective or peace officer employed by it in the course of its business as a watchman or detective, although he has been given police powers by the public authorities at the request of his employer." Southwestern Portland Cement Co. v. Reitzer, supra, and cases cited. The same authority states that ordinarily the question as to whether the wrongful acts were those of *Page 558 
the officer or the corporation is one of fact and should be submitted to the jury.
Hence our duty in disposing of this assignment narrows to ascertaining whether there was sufficient testimony to take the case to the jury in order that the jury might determine whether Brigham was acting in his official capacity as a policeman for the city of Denison or as a servant of appellant. H. M. Wisdom, chief of police of Denison, testified that he discussed with Mr. Kemp, appellant's manager, the matter of a special officer; that he went to Kemp with Brigham, and Brigham went to work at appellant's store; that he told Brigham that he would be under Mr. Kemp's instructions, and to do whatever Mr. Kemp directed him to do. Mr. W. D. Kemp, appellant's manager, testified that he never saw Brigham before he went to work in the store; that, when the chief of police asked him if he did not want a man in the store, he told him he did, that he had lost a large amount from thefts during Christmas week; that he instructed Brigham to let himself be seen in the store, and, if he saw any stealing going on, to call it; that he wanted those who came in the store to steal to know that Brigham was watching them, and that he so instructed Brigham, and in addition that he was to recover any goods taken; that he was there for that purpose, and had authority to do as much; that his company paid Brigham for his services; that he did not have Brigham clothed with a policeman's authority or commission, such was not his business, but Wisdom's, the chief of police; that he needed a man to watch his store, and told Wisdom he might furnish him one; that he gave Brigham no instructions as to what he should do outside the store; that, when he passed his threshold, he had nothing to do with him. Brigham in the main testified to same facts that Kemp did in relation to his employment, his duties, and from whom he received his compensation, and stated in addition that his duties were to watch the merchandise and see that nothing was stolen; "that, if a man was to go in and pick up an overcoat, I was to detain him," etc.; that he understood he had the right to arrest Mrs. Anderson; that he had authority to do whatever the circumstances might require, and meant to do that much; that he was sworn in as a special policeman of the city of Denison, and never met Mr. Kemp, appellant's manager, until presented to him by the chief of police and commenced his duties. In reference to the circumstances preceding the arrest he states that he was in appellant's store engaged in the performance of his duties when Mrs. Anderson attracted his attention. He states that she was standing in the store, a stranger to him, unattended by any clerk or any one waiting upon her when he saw her open her grip and place something therein, and that, under the circumstances, he considered it his duty to ascertain what it was. Accordingly, when Mrs. Anderson departed from the store, he followed her down to the first floor of the store, and through the door and upon the street, overtook her, accosted her, introduced himself as a special officer in the employ of the city, and asked permission to inspect the contents of her grip. He states, further, that his purpose in desiring to examine the contents of the grip was that he thought she had taken something from the store, and, if she had, he intended to regain possession of same, and replace it in the store.
The facts related while in our own language are in substance the same as detailed by the witnesses, and are, in our opinion, sufficient to raise the issue as pleaded, and to carry to the jury for its determination whether or not appellant had invested Brigham with authority or made it his duty to act in respect to the business in which he was engaged at the time the alleged arrest was made, including the further issue of whether or not Brigham made the arrest in the course of his employment, and that hence the court properly refused the requested peremptory charge directing a verdict for appellant.
The second and third assignments of error raise in another way the same issue that we have just discussed, which renders consideration thereof unnecessary.
The fourth assignment of error complains of the refusal of the court to give at appellant's request its special charge No. 3, as follows: "The evidence in this case discloses that at the time of the controversy between plaintiff Janie B. Anderson and Thomas E. Brigham that said Brigham was a peace officer and policeman of the city of Denison, that as such he was in the pay of the defendant and in its employ for certain purposes, and that at the time of his controversy with plaintiff, Janie B. Anderson, that he was not on the premises of defendant, and neither defendant, nor any of its corporate officers, nor its manager, knew anything about his transactions with said Janie B. Anderson. Now, if you believe from the evidence that in speaking to Mrs. Janie B. Anderson and examining her grip he was acting on his own volition, and as a peace officer in the attempt to discharge his duties, you will find for the defendant." Initially, it occurs to us that the testimony did not warrant the submission of this charge. Aside from what might have been the unexpressed intention of Brigham, all the circumstances surrounding and preceding the arrest, including the declarations of Brigham himself, disclose an intention on his part to protect and recover the property of the appellant, rather than to arrest Mrs. Anderson for some offense coming under his notice as a peace officer. He so states, and says, further, that he was induced originally to follow Mrs. Anderson from appellant's store, and take the *Page 559 
steps he did, for the reason that he thought Mrs. Anderson had placed in her hand bag something belonging to the store. Both he and appellant's manager testified that it was part of his duties to recover merchandise taken from the store. His arrest of Mrs. Anderson seems to have been incidental to his effort to reclaim what he conceived to be property taken unlawfully from appellant's store. If we are mistaken in our deduction that the testimony does not raise the issue, then we are of opinion that the charge does not correctly present the issue.
It assumes that because Brigham was an officer, and not upon the premises of appellant, he was not in the discharge of the business of appellant. It assumes, also, at least by inference, that appellant would not be liable for the reason that the acts of Brigham at the particular time were unknown to the appellant, or its managers or officers, while, in our opinion, knowledge upon the part of his principal of the particular act was unnecessary if his authority and instructions authorized the steps taken.
Finally, the charge assumes a condition disputed by Brigham's own testimony when it tells the jury that the transaction as a whole did not occur on the premises of appellant, which we believe is misleading, and not correct in a legal sense, for the reason that the intention to recover the merchandise and make the arrest, if formed at all, was when Brigham concluded that Mrs. Anderson was taking something from the store, and completed when he intercepted her upon the street. The incorrectness in a legal sense lies in the fact that the evidence authorizes the conclusion that the intention to commit the assault was formed in appellant's store by Brigham in the performance of his duty, and the fact that it became necessary for him to leave the store to commit the assault in no wise lessens the liability of his principal. If there had been an actual theft, the arrest would have been none the less justifiable on the part of Brigham, because effected on the street, brought about by his inability to intercept Mrs. Anderson before leaving the premises. We think the charge misleading for the reason that it, in effect, tells the jury that the arrest must have been made upon the premises of appellant before liability arose, and ignored the rule that the master may be liable for the conduct of his servant done in the course of his employment, although the servant abused his authority, or was reckless in the performance of his duty, etc.
The sixth assignment of error complains of that portion of the court's charge which tells the jury to find for appellees on the issue of actual damage, if Brigham "assaulted * * * Mrs. Anderson or required and compelled her to stop * * * and without her consent took from her or required and compelled her to surrender to him her hand bag or grip, and then and there * * * searched same, and that * * * (she) suffered injury as a consequence and as the direct and proximate result thereof" provided that the jury further believed from the evidence that Brigham at such time was in the employment of appellant, and was acting within the authority conferred upon and under directions given him by appellant. The objections to the charge are, (a) there was no evidence of assault; (b) no evidence that Brigham was acting with authority from appellant; (c) no evidence that Brigham required and compelled appellee to stop on the street; (d) no evidence that she was compelled to surrender her hand bag; (e) the charge does not advise the jury what injury sustained by Mrs. Anderson is actionable.
As to whether there was any evidence of assault, Mrs. Anderson testified, in substance, that after leaving appellant's store and after reaching the next block Brigham came up with her from the rear, placed his hand upon her shoulder, and asked if he could speak to her. She halted, and Brigham asked if she lived in Denison, and she replied that she did not. Brigham then said: "Well, can I look in your grip?" Appellee replied: "No; you can't look in my grip." Brigham then said: "You can consider yourself under arrest. I am a detective, and we are in two doors of the police station." Appellee's sister was with her, and suggested that Brigham be permitted to examine the grip, but appellee said, "No; he can't look in my grip." Brigham then took hold of the hand bag and opened it, and examined its contents, opening a package appellee had purchased from appellant, when appellee asked, "What do you mean?" to which Brigham replied, "I am a detective," and appellee inquired, "Detective from where?" but to which Brigham made no response, only to say, after examining the hand bag, "Well, excuse me, ladies," and took his departure. Appellee the same day returned to appellant's store and discovered Brigham, who, upon her appearance, left by a rear entrance, but subsequently returned. Appellee also had a conversation with Mr. Kemp, appellant's manager at the time, relating to Brigham, and states that Mr. Kemp made but scant apologies for his action, stating that Brigham was appellant's detective and also put him back to work in the same place, watching people in the store. Mrs. Jim Carter, who was with Mrs. Anderson from the time she was accosted by Brigham, corroborates Mrs. Anderson in all respects as to what took place between the officer and Mrs. Anderson, and it is unnecessary to repeat her testimony here.
Thomas Brigham, the officer, testified, in substance, among other things, that after what he saw in the store and which we have detailed at another place in this opinion he overtook appellee, and told her that he was a *Page 560 
special officer employed by the city, and asked her if she would let him see in her grip, and that appellee inquired what he wanted to do that for. He replied, "Only investigating; I only ask you to let me see in the grip." That he was permitted to look into the grip, and after doing so turned and walked away. He says that he told appellee that it was not his object to insult her or to be hard on her, but that he was only doing what he thought the proper discharge of his duties required him to do, and that the reason he wanted to search the grip was because of what took place in the store, and because he thought she had taken something from the store, and he desired to retake same, and return it to the store. He states that he had authority to do whatever the circumstances might require, and he meant to do as much. He further states that when he requested permission to examine her hand bag, after explaining to her that he was an officer, that appellee laughed, said, "All right," opened the hand bag, and permitted him to examine same, after which he tipped his hat and walked away. On cross-examination he testified that appellee indicated she did not want him to examine the grip, but after explaining that he was an officer and that it was not his object to insult or be hard upon her, and that he was only doing what his duty required him to do, she, as stated, permitted an investigation of the grip. Without further discussion of the evidence, we are of opinion that it was sufficient to support the findings of the jury that there was an assault, that Mrs. Anderson was compelled and required to stop upon the street and surrender her hand bag, and that the testimony quoted at another place was sufficient to sustain the finding of the jury that Brigham was acting by authority and direction from appellant.
The other objection urged under this assignment to the effect that this portion of the charge did not advise the jury what character of injury sustained by appellee would be actionable injury is not tenable, since the court did tell the jury: "If, under the foregoing instructions, you find for plaintiffs, you will allow such actual damages as you may believe from the evidence will as a present cash payment reasonably and fairly compensate them for the physical and mental pain, if any, suffered by the said Janie B. Anderson directly and proximately resulting therefrom." In addition to the general charge, the court also instructed the jury at the request of appellant: "If you find for the plaintiff in this case you are instructed that in estimating her damages you cannot consider any evidence of pain or suffering or nervous condition or bodily debility not shown by the evidence to have been caused by Thomas E. Brigham touching her on the shoulder and examining the contents of her grip." The testimony of Mrs. Anderson and her physician relating to the physical and mental pain suffered by appellee is sufficient to sustain the finding of the jury on that feature of the verdict, and since only the charge is complained of, and not sufficiency of the testimony, we will not review same.
The seventh assignment of error complains of the first paragraph of the court's main charge. This portion of the charge is: "The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or degree of violence used, is assault and battery. Any attempt to commit a battery, or any threatening gesture, showing in itself, or by words accompanying it, an immediate intention, coupled with an ability to commit a battery, is an assault. When an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the accident or innocent intention. The injury intended may be either bodily pain, constraint, a sense of shame, or other disagreeable emotion of the mind." This part of the charge is a literal copy of article 1008, Rev. Crim. Stats., defining assault and battery. The court supplemented the foregoing with the statutory definition of the words, "coupled with ability to commit." as contained in article 1013, Rev. Crim. Stats., as follows: "By the term coupled with an ability to commit, as used above is meant: (1) that the person making the assault must be in such a position that if not prevented he may inflict a battery upon the person assailed; (2) that he must be in such distance of the person so assaulted as to make it within his power to commit a battery by the use of the means with which he attempts it." Under this assignment, appellant asserts that the court by its charge submitted to the jury a ground of recovery not alleged by the pleading, since it submitted to the jury both assault and battery, while an assault only was charged to have been committed. Appellee's pleading alleged an assault, and the proof sustained the allegation, and it became necessary for the trial judge to define an assault for the guidance of the jury. There is but one lawful definition of assault, and that is the one contained in the criminal statutes, which defines both assault and battery, and, since any attempt to commit a battery is an assault, a definition of assault would have been incomplete without also defining a battery. It would not have been a complete definition of assault to have merely said that "any attempt to commit battery, etc., is an assault," for the reason that the jury would have been unable to determine whether the adduced facts constituted assault without first knowing what a battery was, so that they might first decide that attempted battery was present in. the charge of assault. The court did not attempt to apply the facts to the charge, but let the bare definition stand alone for the *Page 561 
guidance of the Jury in determining whether assault had been committed, and we cannot see that his duty required less. The instant case is not similar to Shapiro v. Michelson, 19 Tex. Civ. App. 615, 47 S.W. 746. In that case the petition sought to recover damages resulting from an assault and battery, but upon submission of the case to the jury the plaintiff asked a charge permitting recovery upon proof of assault alone, which was refused by the trial court and assigned as error upon appeal. Mr. Chief Justice Fisher, in reviewing the case, says that there was testimony sufficient to authorize a charge and sustain a finding upon the commission of a simple assault, and adds: "Evidently, the reason why the court below refused to submit to the jury the question whether the defendant was guilty of an assault, unaccompanied with a battery, is because there is no pleading raising that issue, other than so far as an assault may be included within a battery, or in so far as the expression `assaulted,' as stated in the pleading, presents that issue." He then holds that the pleading is insufficient, independent of the allegation with reference to assault and battery to sustain a recovery, or authorize a charge on assault only. That question, however, is not in the instant case, and we will not pursue the opinion further.
The eighth and ninth assignments raise questions presented by other assignments which we have already discussed.
The tenth assignment of error complains of the amount of the verdict, and asserts that it is unconscionable, and indicates that the jury were actuated by improper motives. As indicated by this opinion, we have carefully considered the testimony in the case, and, without attempting to assign reasons why the verdict of the Jury might be sustained, we content ourselves by the observation that the testimony will not authorize us in the exercise of the narrow and contracted option allowed us by well-settled rules in concluding that the jury was actuated by improper motives in reaching their verdict.
Finding no reversible error in the record, it becomes our duty to affirm the judgment.
Affirmed.