**AMERICAN INSURANCE ASSOCIATION and Miles Smith, Appellants,**

**v.**

**Lottie SMITH, Appellee.**

**No. 7939.**

Court of Civil Appeals of Texas.

Texarkana.

March 11, 1969.

J. D. McLaughlin, Fisher, McLaughlin & Harrison, Paris, for appellants.

Leighton Cornett, Paris, for appellee.

FANNING, Justice.

A venue case tried to the court without the aid of a jury. Lottie Smith sued American Insurance Association and Miles Smith in the District Court of Lamar County, Texas, seeking recovery of damages for false imprisonment. Defendants filed a plea of privilege to be sued in Dallas County, Texas, the county of their residence. Plaintiff controverted the plea and sought to maintain venue in Lamar County under Section 9 of Art. 1995, V.A.T.C.S. The trial court after hearing the evidence adduced overruled the plea of privilege and the defendants have appealed.

Appellants present two points on appeal which read as follows:

"FIRST POINT. The trial court erred in overruling Appellants' Plea of Privilege because no exception to exclusive venue in the county of appellants' residence provided by law exists in this cause.

"SECOND POINT. The trial court erred in holding in effect that appellee had established a prima facie case of false imprisonment committed by appellants so as to justify overruling appellants' plea of privilege."

■ The trial court overruled appellants' plea without making findings of fact or conclusions of law which is proper. Rule 385(e), Texas Rules of Civil Procedure.

■ Where a case is tried without a jury, and no findings of fact or conclusions of law are filed by the trial judge, the judgment should be affirmed if there is sufficient evidence to support it upon any lawful theory, and every issue sufficiently raised by the testimony must be resolved in support of the judgment. 3–B, Tex.Jur., § 873, p. 278; John F. Buckner & Sons v. Allen, Tex.Civ.App., 272 S.W.2d 929.

Section 9 of Art. 1995, V.A.T.C.S. reads as follows:

"9. Crime or trespass.—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed by the defendant, or by his agent or representative, or in the county where the defendant has his domicile. This subdivision shall not apply to any suit based upon negligence per se, negligence at common law or any form of negligence, active or passive."

Appellee, Mrs. Lottie Smith, testified to the effect as follows: She was working in a cafe in Paris, Lamar County, Texas, on April 23, 1965, when Virgil Miller and another man came in the cafe, showed her a badge and told her she had to go with them to the Fire Marshal's office and answer some questions; that she was taken to the office of the Chief of Police in Paris; that they accused her of setting fire to a house she owned north of Powderly, Texas; repeatedly told her she was lying; kept her there about 2½ hours; told her they were going to send her to the penitentiary, and she was trying to get back to the cafe because her sister (the owner of the cafe) was there by herself and it was a busy time; that Virgil Miller and defendant Miles Smith were interrogating her and that they would not let her leave; and that nobody else was in the room during this 2½ hour period of interrogation and that both Virgil Miller and defendant Miles Smith actively participated in this conduct; that she was so nervous she almost went to pieces; that as she came out of the police office, the Chief of Police asked them if they wanted to lock her up, and they stated that they did not for the time being; that after this interrogation she was crying and

so nervous that she could not work and she and her sister had to close up the cafe and go home; that she was sick and not able to work for several days.

With respect to her detention and interrogation, Mrs. Lottie Smith stated to the effect that she was told by a man with a badge (presumably from the evidence this was Virgil Miller, a Deputy State Fire Marshal), that, "I had to go with him over to the Fire Marshal's office and answer some questions". We quote from Mrs. Lottie Smith's testimony, in part, as follows:

"Q. And where with reference to the police station was it that they took you to?

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Mr. Bills' office. O.K. And they did what after they got in there?

A. Well, they wanted to know where I was at on April 13th, 1965, and I told them I was working in the cafe. I had went to work at 6 o'clock at that morning. They told me that I was lying, and I said, 'Well, I was working.' They said, 'You'll have to prove it or we can send you to the penitentiary for burning your house.' And I said, 'Well, I have witnesses to prove I was working.' And then they kept me in there about 2½ hours, I imagine, approximately, asking me questions about if I knew who—if I didn't tell them who burned it they was going to send me to the pen. And everytime I'd tell them I didn't know who burned it they'd tell me that I lied. And they told me I was at the—on that day—it burned around noon, around 12 o'clock—and that morning just before then I'd been down to the store, in a car; had drove down there to that little filling station and store. And I told him that I didn't, and they told me I was lying. And I said, 'I don't drive.' And I was trying to get back, all that time to

work, because my sister was by herself and it was a busy time at that time. *And I didn't want to go, but they told me I had to go.* And—

Q. You didn't want to go from where?

A. From the cafe.

Q. *And they told you you had to go?*

A. *That's right.*

Q. *Now, then why did you stay down there in the police station after you got down there?*

A. *Well, because they wouldn't let me leave.*

Q. *Now, you say 'they'. Who is it that is doing this questioning and—*

A. *Virgil Miller and Miles Smith.*

Q. *Miles Smith?*

A. *Un-huh.*

Q. Now, do you recall anything else that they said to you during this period of time?

A. Yeah, they wanted to know who— They told me that I had spent the night out there that night, and I told them I hadn't, and they said, 'Well, there was cigarette butts all over the place,' and the people at the station had told them that I had spent the night there. And I told them I didn't, and they said, 'You're, lying; you did.' And I told them that I didn't smoke. And they wanted to know who the dress belonged to that was tore up there and I told them I didn't know, and they told me I was lying, I did know. And—

Q. *Now, during all this period of time were both of them in the room with you?*

A. *That's right.*

Q. *Anybody else in there?*

A. *No, sir.*

Q. And you say in your conversation, *'they' were doing this questioning. Would you explain to the Court what you mean by that, please.*

A. Well, part of the time Virgil Miller was asking them, and Miles Smith was writing them down, and then he would ask questions about it, and every time—every question they asked me and I answered, told me I lied. Wanted to know if I owned a car and I told them I did and they asked me when I drove it, and I told them I hadn't; it had been setting in my backyard, I didn't drive. But they kept me down there, asking me questions, until I was so nervous and upset till I just almost went to pieces.

Q. Now, Mrs. Smith, approximately, if you recall, how long did you stay in the Chief of Police's office down there?

A. Well, I'd say around 2 or 2½ hours.

Q. Now, how did this affect you?

A. Well, I just almost—It made me sick. I went back to the cafe and—

\* \* \* \* \* \*

Q. Prior to that time, had you owned a house out in the Powderly Community?

A. Yes, I had.

Q. And did you have insurance on that house?

A. Yes, sir. With Dorcy Mackey.

\* \* \* \* \* \*

Q. Now, Mrs. Smith, did you ever get any money for your fire loss?

A. Yes, I think it was—I think it was around $1300, or maybe—I just don't remember.

Q. Who did you get that from?

A. From the Milwaukee Insurance— which didn't fix my house up in as good a shape as it was in.

Q. Mr. Smith, did you, at the time that these two men questioned you down in the Chief of Police's office on the 23rd of April, 1965, have any knowledge at that time as to who, if anybody, set fire to your house?

A. No, sir, I did not.

Q. And do you, to this day, have any such knowledge?

A. I sure don't, no, sir.

Q. Did you?

A. No, sir." (Emphasis added.)

Appellant Miles Smith testified by deposition that he was a special agent for appellant American Insurance Association, beginning work with them on January 1, 1965; that it was part of his duties to investigate fires of questionable origin; that he had authority from his company to initiate investigations on his own; that an adjuster representing the insurance company gave him information concerning the fire loss in question at Powderly, Texas; that after he got this information, he came through Greenville, Texas, and talked to the adjuster about the fire; that he first came to Paris alone on April 21, 1965, investigating the fire loss, but did not talk to Mrs. Lottie Smith on this trip; that he and Mr. Virgil Miller, an Assistant or Deputy State Fire Marshal, made a trip to Paris on April 23, 1965, that they traveled in Mr. Miles' car from Mr. Miller's home in Greenville on this trip; that Mr. Miller had not done any investigation on this Powderly fire loss prior to the time that appellant Miles Smith worked with him in interrogating Lottie Smith; that the decision to get Mr. Miller, the Assistant or Deputy State Fire Marshal, to assist him in this particular fire loss of Mrs. Lottie Smith at Powderly, Texas, was Mr. Miles Smith's decision; Mr. Miles Smith in his deposi-

tion also admitted interrogating Mrs. Lottie Smith on April 23rd, 1965.

Virgil Miller, the Assistant or Deputy State Fire Marshal, did not testify in the case either in person or by deposition. There is no evidence that Miller had a warrant for the arrest of Mrs. Lottie Smith.

■ The essential elements of false imprisonment are a wilful detention of the person, a detention without authority of law, and a detention against the consent of the party detained. 25 Tex.Jur.2d, False Imprisonment, § 3, p. 242.

■ A false imprisonment is a trespass within the meaning of the venue statute so that venue properly is laid within the county where the trespass is committed. 25 Tex.Jur.2d, False Imprisonment, § 44, p. 276; Kroger Co. v. Warren, Tex.Civ.App., 420 S.W.2d 218, no writ (Houston—1967).

Section 46, False Imprisonment, 25 Tex. Jur.2d, p. 278 reads in part as follows:

> "When the plaintiff has made out a case to show that he was detained, a prima facie case of false imprisonment has been made out and the defendant must then show that the detention was lawful. Thus where the defendant contends that the plaintiff committed a crime for which a lawful arrest without a warrant could be made, the burden rests on the defendant to show that the acts of the plaintiff constituted a crime for which an arrest without a warrant could lawfully be made."

■ The record in this case is devoid of any evidence which would justify Mr. Virgil Miller, an Assistant or Deputy State Fire Marshal, to make an arrest of the person of Mrs. Lottie Smith or to detain her in the manner above outlined, and there is ample evidence in the record of probative force which would clearly authorize implied findings of the trial court to support all the necessary elements of false imprisonment of Mrs. Lottie Smith, and a trespass against her, on the part of Virgil

Miller and Miles Smith under the law of principals acting together. In this connection see Kroger Co. v. Warren, supra (420 S.W.2d 218) and authorities cited therein.

■ It also having been shown that Miles Smith was an agent of American Insurance Association, working in the scope of his employment on the occasion in question, it follows that his principal, the association, would also be liable for the act of such agent. In this connection see § 28, False Imprisonment, 25 Tex.Jur.2d, p. 261–2, wherein it is stated in part as follows:

> "A master or principal is liable to one falsely imprisoned by the act of an agent or employee acting within the scope of his employment. And the principal or employer will be liable if he authorized or ratified the act that brought about the false imprisonment; if he made it the duty of the agent or employee to act in respect to the business in which the agent or employee was engaged when the wrong was committed; or if the wrongful act was done in the course of the agency or employment, even though the agent or servant employee abused his authority, or was reckless in the performance of his duty. If the act of the agent or employee is done within the scope of his authority as an agent or employee and while acting in furtherance of the principal or employer's business, the principal or employer is liable in damages for the false imprisonment, regardless of whether the agent or employee has authority to do the particular act complained of, and regardless of whether the act is performed in the ordinary way."

We hold that there was ample evidence of probative force, and that the same was sufficient to support the trial court's implied findings in support of its order overruling defendants' plea of privilege, and that venue of this case was properly maintainable in Lamar County, Texas, under § 9 of Art. 1995, V.A.T.C.S.

We hold that the trial court correctly overruled appellants' plea of privilege. Appellants' points are overruled.

The judgment of the trial court is affirmed.