**Margaret Lois DUPREE et vir., Appellants,**

v.

**PIGGLY WIGGLY SHOP RITE FOODS, INC., et al., Appellees.**

No. 1061.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1976.

Opinion on Motion for Rehearing Oct. 14, 1976.

Rehearing Denied Nov. 4, 1976.

John C. Werner, Werner & Rusk, Houston, for appellants.

William R. Powell, Weldon Funderburk, Funderburk, Powell, & Gibson, Law Office of Fred Parks, Richard Burns, Houston, for appellees.

OPINION

NYE, Chief Justice.

Plaintiffs, Margaret Dupree and husband, Charles Dupree, Jr., brought suit against Denco Security Systems, Piggly Wiggly Shop Rite Foods, Inc., R. B. Denson and I. B. I. Security Service, Inc., for false imprisonment and malicious prosecution. The case was tried before a jury which answered special issues favorable to Mrs. Dupree concerning false imprisonment, but found that Denco Security Systems on the occasion in question was acting as an independent contractor for Piggly Wiggly. Based on such findings, the trial court denied plaintiffs any recovery against Piggly Wiggly. Mrs. Dupree has timely perfected her appeal to this Court.

The plaintiff, Margaret Dupree was a married woman, 56 years of age and mother of four children. At the time of the incident in question, Mrs. Dupree was very active in both school and church activities and had never, before the occasion in question, been charged with a criminal act.

Defendant, Denco Security Systems, is a private investigation company who, at the time in question, worked exclusively for Piggly Wiggly Shop Rite Foods, Inc. The two security guards who participated in the false imprisonment of Mrs. Dupree were Eddie Bo Wilson and J. O. Harris, both being employees of Denco. The defendant, Piggly Wiggly, is a corporation doing business in the State of Texas, in the retail grocery business. Piggy Wiggly had a contract with Denco whereby Denco was to provide external and internal security services for its stores. The store manager of the Piggy Wiggly store at the time the incident made the basis of the lawsuit occurred, was Mr. Jerry Michalik.

Mrs. Dupree testified during the trial that on the afternoon of October 23, 1969,

at about 2:30 p. m. she entered the Piggy Wiggly store, located on Cavalcade Street in Houston, Texas, for the purpose of buying some groceries and other non-food items. The evidence reflects that she had been a frequent customer in this store for the past year. Mrs. Dupree testified that while in the store, she purchased some cupcakes, a package of salami, a small toy rocket, two pairs of beads, a candy bar and a pair of panties. Mrs. Dupree was checked out by Thelma Feak, one of the store's checkers. She received a sales receipt for the above items and then left the store.

Upon arriving home, Mrs. Dupree noticed that she was out of milk. Her daughter complained that the type of salami her mother had purchased was a type which she did not like. Mrs. Dupree then decided it would be necessary for her to return to the store for the milk and try to exchange the salami for another kind. Upon entering the store, the second time that day, Mrs. Dupree carried with her a large shopping bag which she stated contained those items she had purchased earlier in the day.

Mrs. Dupree testified that she went back to the meat counter to exchange the package of salami, but could find no other type of salami. She then went by the toy section to look at the toy rocket and beads to see if she could find some that were better packaged than the ones she had previously purchased, but found them to be the same. She then picked up some other items (bread, root beer, chicken, milk and ice cream) and proceeded through the check out stand at which time she paid for them.

After Mrs. Dupree left the store, two men approached her, told her that they were the police and that she was under arrest. Those two individuals were later identified as J. O. Norris and Bo Wilson, security agents for Denco Security Systems. Although the evidence is conflicting, it appears that Mrs. Dupree was told by the two security guards that they were arresting her for shoplifting. Mrs. Dupree was then taken back into the store by the two guards and back to a storeroom in the rear of the store. Everything was then taken out of her purse and billfold. Mrs. Dupree testified that she gave one of the guards the sales receipt she received earlier in the day showing that those items she was accused of shoplifting had been paid for. One of the guards admitted that Mrs. Dupree gave him the sales receipt covering the questioned items, but he testified that it did not correspond with the prices of those items she was accused of shoplifting. He said that he gave the sales receipt back to Mrs. Dupree.

Mrs. Dupree testified that she stayed in the storeroom for approximately an hour and forty-five minutes and was not allowed to leave nor was she allowed to use the telephone. She repeatedly denied that she had taken any merchandise without first paying for it. Mrs. Dupree reiterated to the guards that she had purchased the items earlier that same day and requested the security guards to talk with the checker (Thelma Feak) so that her story could be verified. The two guards refused to do so. Although the value of the merchandise allegedly stolen was only of the approximate value of $2.12, the security guards decided to file criminal charges for shoplifting against her. The evidence showed that the store manager, Mr. Michalik, was in the back storeroom with the two security guards and Mrs. Dupree approximately half the time that she was back there.

One of the guards called the police department and requested that police officers be sent to pick her up. Two Houston uniformed police officers subsequently arrived and led her out of the store and took her to the Houston Police Station. Mrs. Dupree was fingerprinted, photographed, booked and then placed in jail. She stayed in jail until later that evening when she was finally released on bond. The criminal complaint filed against her by the security guards was subsequently dismissed on February 17, 1970.

On June 6, 1970, Mrs. Dupree initiated this lawsuit. The defendant, Piggly Wiggly Shop Rite Foods, Inc., answered the

lawsuit contending that the incident complained of was proximately caused by the acts of a third party (Denco) over whom it had no control and that Denco was not an agent, servant or employee of Piggly Wiggly.

The trial of the cause commenced on January 13, 1975, and was tried before a jury. In answer to certain special issues submitted, the jury found that: Mrs. Dupree did not commit the offense of shoplifting; that Mrs. Dupree was falsely imprisoned; that Norris and Wilson (guards) participated in the false imprisonment of Mrs. Dupree; that Michalik (store manager) did not participate in the false imprisonment of Mrs. Dupree; that guards Norris and Wilson participated in the filing of the criminal complaint against Mrs. Dupree; that Michalik (store manager) did not participate in the filing of such complaint; that Norris and Wilson (guards) did not have probable cause to believe Mrs. Dupree had committed a criminal offense; that Norris and Wilson (guards) were not acting as employees of Piggly Wiggly on the occasion in question; that Denco was acting as an independent contractor on the occasion in question; that the reasonable and necessary medical and legal expense incurred by Mrs. Dupree was $650.00; that the sum of $25,000.00 would reasonably compensate Mrs. Dupree for the damages she sustained; and found no exemplary damages should be assessed against Piggly Wiggly.

The plaintiff then moved for judgment regarding defendant, Piggly Wiggly Shop Rite Foods, Inc., contending that by reason of the jury's answers and as a matter of law, judgment should be entered against Piggly Wiggly for the amount of actual damages of $25,650.00. The trial court entered a Default Judgment against Denco Security Systems for the sum of $50,650.00 (the actual damages plus $25,000.00 exemplary damages), but adjudged that plaintiff should not recover anything from defendant Piggly Wiggly Shop Rite Foods, Inc.

Mrs. Dupree brings forward five points of error on appeal. No complaint has been raised by the appellees concerning the jury's findings that: Mrs. Dupree did not commit the offense of shoplifting; that she was falsely imprisoned; or to the amount of damages. The primary question on appeal is whether under these facts and circumstances, Piggly Wiggly is responsible for the acts of Denco and its employees.

The appellant contends that the trial court erred in failing to enter judgment for her on the verdict because the defendant Piggly Wiggly had a "non-delegable duty" to afford Mrs. Dupree a safe place in which to shop, and liability attached to Piggly Wiggly as a matter of law when the duty was breached by the two security guards who were acting in behalf of Piggly Wiggly.

Appellee, Piggly Wiggly, contends that where an employer (Piggly Wiggly) contracts with an agency (Denco) for private police or security service, in order to be liable for the acts of personnel supplied, it is dependent upon a factual determination of the nature of the employment relationship between the employer (Piggly Wiggly) and the agency (Denco) supplying the personnel and the nature of the tort committed. Appellee says in effect that since the jury found that Denco was an independent contractor, Piggly Wiggly is not liable regardless of what the security guards did. The question is whether or not Piggly Wiggly is liable as a matter of law for the tortious conduct of Denco's employees or agents under the facts.

■ There are two types of relationships easily recognized in Texas that could exist between Piggly Wiggly and Denco which would cause liability to attach to Piggly Wiggly for the tortious acts of Denco's agent or employee. One is that of Master-Servant and the other is Principal-Agent. A master or principal is liable to one falsely imprisoned by the acts of an employee or agent acting within the scope of his employment. If the act of the employee or agent is done within the scope of his authority as an employee or agent and while acting in furtherance of the employ-

er's or principal's business, then the employer or principal is liable in damages for the false imprisonment. See *Rucker v. Barker,* 108 Tex. 280, 192 S.W. 528 (Tex.Sup.1917); *Smith v. M System Foods Stores, Inc.,* 156 Tex. 484, 297 S.W.2d 112 (Tex.Sup.1957); *Perkins Bros. Co. v. Anderson,* 155 S.W. 556 (Tex.Civ.App.—Dallas 1913, writ ref'd); *Magnolia Petroleum Co. v. Guffey,* 102 S.W.2d 408 (Tex.Comm'n App.1937, opinion adopted); *Alamo Downs, Inc. v. Briggs,* 106 S.W.2d 733 (Tex.Civ.App.—San Antonio 1937, writ dism'd); *Clement v. Emmons,* 170 S.W.2d 610 (Tex.Civ.App.—Waco 1943, writ ref'd w. o. m.); *American Insurance Association v. Smith,* 439 S.W.2d 418 (Tex. Civ.App.—Texarkana 1969, no writ); *Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); *Kroger Company v. Warren,* 420 S.W.2d 218 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ); Annot. 25 Tex.Jur.2d False Imprisonment § 28; 92 A.L.R.2d 15 (1963); 38 A.L.R.3rd 1332 § 3 (1970); 57 C.J.S. Master and Servant §§ 561–575; 1A C.J.S. Agency §§ 254–261; 35 C.J.S. False Imprisonment §§ 39–40a. See also Restatement of Agency 2nd § 245.

Under the rule of the aforesaid cases, in order to cause liability to attach to Piggly Wiggly for the tortious acts of the two guards, it would be incumbent upon a plaintiff to establish that: 1) the relationship between Piggly Wiggly and the two security guards was that of either master-servant or principal-agent; 2) that the servant or agent actually caused or participated in the illegal restraint; and 3) that he acted within the scope of employment or authority either implied or express; or 4) that the act was ratified by the master or principal. In the case at bar, the jury found that the two security guards were not acting as employees of Piggly Wiggly but were employees of Denco and that Denco was acting as an independent contractor.

This brings us to appellant's main contention which presents a more difficult problem. That is, even though the jury found that Denco was an independent contractor,

such relationship will not relieve Piggly Wiggly from liability because Piggly Wiggly had a "non-delegable" duty to afford Mrs. Dupree a safe place in which to shop. As a consequence, liability attached as a matter of law when such duty was breached by the acts of the security guards who were acting on behalf of Piggly Wiggly from the outset.

We have found no Texas case which has had before it the exact question of whether or not the "*duty*" owed by a business establishment seeking to protect its property from shoplifters is "non-delegable" or "nonassignable" under circumstances where a store owner attempts to insulate itself from such responsibility to an innocent victim of a false arrest or false imprisonment by a security guard of an independent contractor employed for such purpose.

In view of the absence of Texas case law on this subject, we look to the numerous out-of-state cases relating to the liability of an employer for acts of security guards who are employees of an independent contractor. Many of such cases can be found in 38 A.L.R.3rd 1332. Under Section 5 of this article entitled "non-delegable duty of hirer", there are two exceptions prevalent to the general overall principal, that an employer of an independent contractor is not liable for the *negligent acts* committed by such contractor or his employees.

■ Under one exception, it is generally recognized, (Texas included), that where the work to be performed is "inherently dangerous", duties commensurate therewith cannot be delegated to an independent contractor so as to relieve the delegator of liability. See *Sun Pipe Line Co., Inc. v. Kirkpatrick,* 514 S.W.2d 789 (Tex.Civ.App. —Beaumont 1974, writ ref'd n. r. e.); *Cage v. Creed,* 308 S.W.2d 78 (Tex.Civ.App.— Waco 1957, no writ); *Olson v. B. W. Merchandise, Inc.,* 388 S.W.2d 737 (Tex.Civ.App. —Austin 1965, no writ.); *Gragg v. Allen,* 481 S.W.2d 452 (Tex.Civ.App.—Waco 1972, writ dism'd); *Cameron Mill & Elevator Co. v. Anderson,* 98 Tex. 156, 81 S.W. 282 (Tex. Sup.1904). See also 30 Tex.Jur.2d Indepen-

dent Contractors § 28, p. 516; 41 Am.Jur.2d Independent Contractors § 41, p. 805; 38 A.L.R.3rd 1332 § 5(b); Restatement 2nd Torts § 427.

The first aspect of the question presented is, whether the task of guarding one's property from possible shoplifters by security guards is of such an inherently dangerous character, that such work constitutes a dangerous non-delegable duty of the owner. The theory upon which this liability is based is that a person who engages a contractor to do work of an inherently dangerous character, remains subject to a duty, (an absolute, non-delegable duty) to see that it is performed with that degree of care which is appropriate to the circumstances. 41 Am.Jur.2d Independent Contractors, § 41. Liability of the employer depends upon his antecedent knowledge of the danger inherent in the work or in a finding that a reasonable prudent man (or corporation) should in the exercise of due diligence, have known of such dangerous work. See Restatement 2nd Torts § 427 and 427A. The question of what type work is considered inherently dangerous so as to impose liability upon an employer, is not always readily soluble. It usually is dependent on the facts of each particular case.[1] For instance, it has been held that the protection of one's property with firearms does not, in and of itself, constitute an inherently dangerous activity. This type of duty, can in some instances, be delegated to an independent contractor, thereby relieving the hirer of a security agency from liability for acts of ordinary negligence committed by the agency's personnel. *Brien v. 18925 Collins Avenue Corp.*, 233 So.2d 847 (Fla.D.C.App.1970). See also 38 A.L.R.3rd 1332 § 5(b). The record before us does not readily point out the inherent dangers of the security work. Therefore, under the state of the facts in this case we cannot hold as a matter of law that the work of the security guards in protecting Piggly Wiggly's property from shoplifters was inherently or intrinsically dangerous. If plaintiff was to prevail upon this theory, (inherently dangerous work), it would have been incumbent upon her to request special issues thereon. *Sun Pipe Line Co., Inc. v. Kirkpatrick*, 514 S.W.2d 789 (Tex.Civ.App. —Beaumont 1974, writ ref'd n. r. e.). *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d 529 (Tex.Sup.1965); Rule 279, T.R.C.P. This she did not do.

The other exception is that because of the "personal character" of duties owed to the public by one adopting measures to protect his property, owners and operators of enterprises cannot, by securing special personnel through an independent contractor for the purposes of protecting property, obtain immunity from liability for at least the intentional torts of the protecting agency or its employees. See *Adams v. F. W. Woolworth Co.*, 144 Misc. 27, 257 N.Y.S. 776 (N.Y.C. Sup.Ct.1932); *Hendricks v. Leslie Fay, Inc.*, 273 N.C. 59, 159 S.E.2d 362 (Sup.Ct.1968); *Szymanski v. Great Atlantic & Pacific Tea Co.*, 79 Ohio App. 407, 74 N.E.2d 205 (C.A. 1947); *Zentko v. G. M. McKelvey Co.*, 88 N.E.2d 265 (C.A.1948); *Halliburton-Abbott Co. v. Hodge*, 172 Okl. 175, 44 P.2d 122 (Sup.Ct.1935); *Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 254 A.2d 285 (R.I.Sup.Ct.1969); *Malvo v. J. C. Penney Company, Inc.*, 512 P.2d 575 (Alaska Sup.Ct.1973). False imprisonment is an intentional tort.

In *Adams v. F. W. Woolworth Co.*, supra, the leading case, the plaintiff, a customer in the defendant's store, recovered damages for false arrest. The defendant contended the plaintiff's arrest was caused by employees of one Lowenthol, (an independent contractor), who had contracted to provide the defendant with detective service. In rejecting this contention, the court said:

". . . A store owner who places a detective agency on his premises for the purpose of protecting his property by var-

---

1. For a list of work held inherently dangerous and not inherently dangerous, see 57 C.J.S. Master-Servant § 590, pp. 362–363.

ious means, including arrest, should not be immune from responsibility to an innocent victim of a false arrest made by the detective agency, even as an independent contractor . . . customers of Woolworth Company are invited into the store to buy its merchandise, for the profit of Woolworth Company. Can it be said that Woolworth Company can disclaim all duty of protecting them from the tortious acts of detectives brought by it into its own premises for the very purpose, among others, of making arrest of its customers? This is not the case of a contractor doing his work negligently. Where negligence is the sole basis of the liability, the doctrine of respondeat superior has been held inapplicable to independent contracts. Negligence does not enter into the tort of false arrest. The act itself, if not justified under statute . . . , is tortious, irrespective of negligence. Lowenthol, was brought onto the premises to watch and also to arrest. Immunity from vicarious liability would permit any store keeper to subject his customers to the hazards of an irresponsible detective agency without peril to himself. He would obtain all the benefit of the surveillance and punishment of shoplifters; he would be subject to none of the penalties for unjustified or unlawful arrest of law-abiding citizens. The opportunities for gross injustice afforded by such a doctrine are too manifest to permit its incorporation into the jurisprudence of our state, without compelling reason."

The weight of the above authorities seems to be that one may not employ or contract with a special agency or detective firm to ferret out the irregularities of its customers or employees and then escape liability for the malicious prosecution or false arrest on the ground that the agency and or its employees are independent contractors. Consideration of public policy requires the necessity for holding a responsible person liable for the acts done by others to its patrons in the prosecution of its business. Such cases adopting this policy have been founded on the principle that he who expects to derive advantage from an act which is done by another for him, must answer for any intentional injury which a third party may sustain from it. We believe that a holding to the contrary immunizes the corporation from the responsibilities imposed by law, thereby permitting it to subject its patrons to the hazards of an irresponsible detective agency while escaping all danger of the legal ramifications adverse to itself.

The undisputed facts before us show that Denco Security Systems was employed by and worked exclusively for Piggly Wiggly Shop Rite Foods, Inc. providing both external and internal security for the various Piggly Wiggly stores in Houston, Texas. When a security problem arose in one of the stores, Piggly Wiggly would contact Denco, inform them of the specific problem, and request that Denco send security guards out to the particular store. When the guards arrived at the particular store to which they were assigned, they would report in to the store manager (which in this case was Michalik) making him aware that they were on the premises. At this time the store manager would either brief the guards on the problem as he believed existed or point out to the guards a customer who he suspected of shoplifting. The guards would then proceed to walk around the store keeping the suspected shoplifter under surveillance until they saw the allegedly illegal conduct occur, at which time an arrest would ensue.

It is clear that Piggly Wiggly provided the place in which these security guards were to work thereby intentionally exposing its customers to the possible tortious conduct of the guards. The jury made several findings, none of which were complained of or attacked by Piggly Wiggly. Those findings are that Mrs. Dupree did not commit the offense of shoplifting; that she was falsely imprisoned; and that Norris or Wilson participated in the false imprisonment. At the time Mrs. Dupree was arrested and taken back into the Piggly Wiggly

store, the manager, (Michalik) was fully aware of the situation and, in fact, remained in the back storeroom at least half the time Mrs. Dupree was retained there. It is undisputed that Piggly Wiggly did not make any effort to investigate the propriety of the arrest or detention through its management or through other employee.

There are certain duties that an owner of a store cannot absolve itself from liability by delegating the performance thereof to an independent contractor. Such non-delegable duty cases hold the store operator liable for the negligence of the contractor although he himself has done everything that could reasonably be required of him.

■ We hold that Piggly Wiggly by securing through the guise of an independent contractor, security guards to protect its property by various means, cannot obtain immunity from liability for false imprisonment which such store owner would not be equally entitled to if such owner itself directly selected and paid the agents expressly retaining the power of control and removal. When a store owner undertakes these functions its duties are *personal* and non-assignable and where the company arranges for and accepts the service, it will not be permitted to say that the relationship of master and servant as far as responsibility is concerned, does not exist. Negligence does not enter into the tort of false imprisonment. The act itself is tortious irrespective of negligence. The appellant's second point of error is sustained.

The appellee, Piggly Wiggly Shop Rite Foods, Inc., by cross-point, contends that the jurisdiction of this Court has not been invoked as to certain of appellant's points of error, (Number two above not involved), because appellant's motion for new trial was not filed in time to preserve these points.

On April 25, 1975, the trial court entered its original judgment whereby the plaintiff should recover by default from Denco Security Systems, the sum of $50,000.00. ($25,000.00 actual and $25,000.00 punitive damages). On May 7, 1975, (12 days later) the plaintiff filed an instrument designated "Plaintiff's Renewal Motion for Judgment And in the Alternative, Motion for New Trial". It is here noted that: A motion for new trial when required, shall be filed within ten (10) days after the judgment or order complained of is rendered. Rule 329b(1) T.R.C.P.

Thereafter on May 27, 1975, plaintiff filed her "Application for judgment nunc pro tunc" requesting the trial court to add to the $50,000.00 judgment, damages recovered against Denco Security Systems in the amount of $650.00. This being the damages for legal and medical expenses incurred by plaintiff which was inadvertently omitted from the original judgment. The trial court then entered a judgment nunc pro tunc and included the $650.00 as damages recoverable by plaintiff (as found by the jury), from Denco Security Systems on that date (May 27, 1975).

Piggly Wiggly contends, that since appellant's motion for new trial (filed May 7, 1975) was not filed within ten (10) days from date of the original judgment (April 25, 1975), the errors complained of in the motion for new trial cannot be considered by this Court. Citing Rule 5 T.R.C.P.

■ Thirty days from the date the original judgment was entered fell on May 25, 1975, which was a Sunday. The next day, Monday, May 26, 1975, was a legal holiday (Memorial Day). The next day, not a Saturday or Sunday or a legal holiday, was May 27, 1975, the date the nunc pro tunc judgment was entered. Therefore, the trial court's action was within the thirty day period in which the trial court has absolute control over its judgment to make corrections for clerical as well as judicial errors. Rules 4 and 329b, T.R.C.P.

Since the trial court could not act on Sunday and the next day was a legal holiday, the court had jurisdiction, (under rule 4) to act on the following day. Therefore, appellant's motion for new trial was timely filed, it dating from the entry of the judg-

ment nunc pro tunc. See Rule 306c "Prematurely filed Motions for New Trial" and see Rule 4, 329b, T.R.C.P. Appellee's cross-point is overruled.

Although Plaintiff obtained a default judgment against Denco Security Systems which company does not appear as appellee, the only other appellee on appeal besides Piggly Wiggly is R. B. Denson. The appellant in her fifth point of error complains of the action of the trial court in dismissing R. B. Denson from the subject lawsuit. The record shows that plaintiff's cause of action arose on October 23, 1969. On June 26, 1970, the plaintiff filed her original petition naming Denco Security Systems as one of the defendants. On October 29, 1973, the plaintiff named R. B. Denson individually as a defendant for the first time in her third amended original petition. In said pleading, no relationship or connection between Denson and Denco Security Systems was alleged. In fact, in plaintiff's fourth amended petition on which she went to trial, plaintiff alleges that Denco Security Systems is a corporation doing business in the State of Texas engaged in the security business. The appellant admits that Denson was not made a party individually to the suit until well over four years after her cause of action occurred. Denson answered alleging that plaintiff's suit was barred by both the two and four year Statute of Limitations. Articles 5526, 5529, Tex.Rev.Civ. Stat.Ann.

On the date of trial (January 13, 1975), prior to the empaneling of the jury, Denson filed a motion for instructed verdict contending that the plaintiff's cause of action insofar as he was concerned, was commenced more than four years after plaintiff's cause of action arose. The trial court granted Denson's motion for instructed verdict and dismissed him from the suit.

The appellant contends that Denson has always been a party to the lawsuit because the testimony was undisputed that Denco Security Systems was the trade or assumed business name of R. B. Denson, an individual, citing Rule 28, T.R.C.P., as its authority. The Rule says:

"Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on motion by any party or on the court's own motion the true name may be substituted."

In plaintiff's trial petition, there is no indication as to what capacity Denson was being sued, nor do the pleadings allege that Denson is an agent, officer or principal of Denco Security Systems. At the time the trial court granted Denson's motion for instructed verdict, there was no pleadings or evidence before the court showing that Denco Security Systems was a trade name or assumed name of R. B. Denson. At the end of the testimony, appellant's attorney attempted to introduce into evidence certain interrogatories propounded to Denco Security Systems showing that Denco Security Systems was the trade name or assumed name of R. B. Denson. However, the trial court stated "that the interrogatories should not be read to the jury and should not be accepted into evidence because they are not relevant to any question that will come before the jury", to which neither party objected. These interrogatories do not appear in the record before us.

Since plaintiff has failed by both pleading and proof, to show the relation between Denco Security Systems and R. B. Denson, the trial court was correct in directing a verdict for Denson. Appellant's fifth point of error is overruled.

Because of the disposition hereinafter made, it is not necessary for us to consider appellant's other points of error. The Jury found that Plaintiff had been damaged in the amount of $25,650.00. Those damages are here rendered against Piggly Wiggly Shop Rite Foods, Inc. The judgment of the trial court is accordingly reversed as to appellee Piggly Wiggly Shop Rite Foods, Inc. and judgment is here rendered for the Plaintiffs Margaret Dupree and husband Charles Dupree, Jr. in the amount of $25,-

650.00 with interest from date of judgment and for costs. The judgment as to appellee R. B. Denson is affirmed.

REVERSED AND RENDERED IN PART AND AFFIRMED IN PART.

## OPINION ON MOTION FOR REHEARING

Appellee Piggly Wiggly Shop Rite Foods, Inc. in its fourth and fifth assignments of error in its motion for rehearing complains that this Court erred in considering appellant's second point of error and rendering judgment thereon because said alleged error by the trial court was not properly perfected for consideration by this Court.

■ Before an appellant is entitled to rendition by a Court of Civil Appeals, he must first present the error to the trial court in the form of a proper motion to allow the trial court to correct its error. In order to preserve the right to rendition of judgment, the proper predicate must be made by one or more prejudgment motions or objections. A motion to disregard a jury finding under Rule 301, T.R.C.P. is one way to preserve such a point of error as we have before us. See Calvert, No Evidence and Insufficient Evidence, 38 T.L.R. 359 (1900).

■ It is Piggly Wiggly's contention that neither appellant's motion for judgment or renewed motion for judgment are sufficient to provide the necessary predicate for rendition of judgment. The objective of the rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To this end; the rules shall be given a liberal construction. Rule 1, Objective of Rules, T.R.C.P.

■ If the motion for judgment was sufficient to call the trial court's attention to the question raised and was sufficient to direct the court's attention to the matter complained of, the appellate court can rule on the point of error where the substance of the error complained of can be determined. Compare *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (Tex.Sup.1943). We hold that the appellant's motion for judgment was sufficient to disregard certain jury findings and for the trial court to have rendered judgment for the plaintiff and against Piggly Wiggly. In *Myers v. Crenshaw*, 134 Tex. 500, 137 S.W.2d 7 (Tex. Comm'n App.1940, opinion adopted), the court said that the substance of a motion is not to be disregarded because of an imperfection in form.

■ There are three (3) necessary elements which must be included in a motion to disregard findings. The motion must: 1) designate the finding and/or findings which the court is called upon to disregard; 2) specify the reason why the finding or findings should be disregarded; 3) contain a request that judgment be entered upon the remaining findings after the specific findings have been set aside or disregarded. *Hines v. Parks*, 128 Tex. 289, 96 S.W.2d 970 (Tex.Comm'n App.—1936, opinion adopted); *Employers Mutual Casualty Company v. Poorman*, 428 S.W.2d 698 (Tex.Civ.App.— San Antonio 1968, writ ref'd n. r. e.).

■ In light of this test, we examined appellant's renewed motions for judgment and determined that they were sufficient to direct the trial court's attention and our attention to the matter complained of, i. e., to disregard certain jury findings. The renewed motion for judgment clearly sets out the reason the findings should be disregarded. The appellant contended that the findings were against the law as it concerned this case. The motion contained a request that judgment be entered in appellant's favor based on the remaining findings. Therefore, the second and third elements of the motion were clearly present. The only real question concerns the first element that the motion designate the findings to be disregarded. Appellant's renewed motion for judgment requests the trial court to grant judgment against Piggly Wiggly based on the jury answers to Special Issue Numbers 1, 2, 3, 13, 14, and 15. In effect, to disregard all the rest of the findings.

This is similar to the fact situation in *Myers v. Crenshaw,* supra. In the *Myers* case, the motion in question asked the court to disregard all or any special issues except No. 10. The appellant in the *Myers* case was contending that this motion was insufficient under Art. 2211 (now Rule 301) for the court to set aside Special Issue Number 9 because said issue was not specifically designated to be set aside in the motion. The court rejected the appellant's contention and held that the motion was sufficient for the trial court to set aside all issues except No. 10. This same effect was given by us to the appellant's renewed motion for judgment in the case at bar. By asking the court to render judgment based on Special Issues 1, 2, 3, 13, 14 and 15, the appellant, rather unartfully but still effectively, requested that the trial court disregard the remaining issues.

The appellant's point of error that the trial court erred in failing to enter judgment for appellant based on the verdict as a matter of law, was a properly perfected point of error and as such, with the argument under the point and the appellee's answer to such argument, empowered this Court to render that judgment which the trial court should have entered. Rule 434, T.R.C.P. *Martin v. Commercial Standard Fire and Marine Insurance Company,* 505 S.W.2d 799 (Tex.Sup.1974); *Perez v. Los Fresnos State Bank,* 512 S.W.2d 796 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Yanowski v. Fort Worth Transit Co.,* 204 S.W.2d 1001 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n.r.e.); *Lehrer v. Wegenhoft,* 203 S.W.2d 245 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.); *Comer v. Brown,* 285 S.W. 307 (Tex.Comm'n App.—1926, jdgmt. adopted).

We have carefully reconsidered all of appellee's points on rehearing. Its motion for rehearing is OVERRULED.