Laura F. NEALY et al., Appellants,

v.

FIDELITY UNION LIFE INSURANCE
COMPANY, Appellee.

No. 16314.

Court of Civil Appeals of Texas.

Dallas.

Feb. 28, 1964.

Locke, Purnell, Boren, Laney & Neely
and John D. Crawford, Dallas, for appel-
lants.

Jackson, Walker, Winstead, Cantwell & Miller, L. P. Bickel and Gerald W. Benson, Dallas, for appellee.

WILLIAMS, Justice.

Wrongful death action. Article 4671 et seq., Vernon's Ann.Civ.St., and Art. 16, § 26, Vernon's Annotated Constitution of the State of Texas. On May 5th, 1961 Willie Fred Nealy was shot and killed by Earl S. Swinney, an armed guard, in the lobby of the Fidelity Union Life Insurance Company Building in the City of Dallas, Texas. This action was instituted by the surviving wife and minor children of the deceased, seeking actual and exemplary damages against both Fidelity Union Life Insurance Company and Earl S. Swinney, who was alleged to have been acting within the course and scope of his employment for such company. The defendant Swinney, though duly served, filed no answer but appeared in person and participated in the trial of the case. The trial was before a jury and at the conclusion of the evidence the court submitted the case on special issues. In response to these issues the jury found (1) that the action of Swinney in shooting the deceased, Nealy, was not wrongful; (2) that the action of Swinney in shooting Nealy did not grow out of the performance by Swinney of his duties as an employee of the defendant Fidelity Union Life Insurance Company; (3) that the defendant Fidelity Union Life Insurance Company failed to properly train Swinney as an armed guard; (4) that such failure was negligence; (5) that such negligence was a proximate cause of the death of Nealy; (6) that at the time the defendant Fidelity Union Life Insurance Company hired Swinney he was not an unfit person for the duties entrusted to him as an armed guard; (9) that the act of Swinney in shooting Nealy was performed as a resentment of insult, or the furtherance of personal animosity of Swinney towards Nealy; (10) that the actual damages sustained by the widow as a result of the death of her husband was $1,500; (11)

that the minor children sustained actual damages in the sum of $6,300 as a result of the death of their father; and (12) no exemplary damages should be paid by the defendant Fidelity Union Life Insurance Company.

The trial court, upon motion of the defendant Fidelity Union Life Insurance Company set aside and disregarded the answers of the jury to Special Issues 3, 4, and 5, noted above, and rendered judgment that plaintiffs take nothing against either of the defendants. From this judgment plaintiffs appeal, assigning twelve points of error. We find no reversible error reflected in this record and therefore affirm the judgment of the trial court.

■ By their first point of error appellants complain of the action of the trial court in refusing to grant them judgment against the defendant Swinney who, though being duly served, failed to file an answer. Rule 240, Texas Rules of Civil Procedure provides that where there are several defendants, some of whom have answered or have not been duly served and some of whom have been duly served and have made default, an interlocutory judgment by default may be entered against those who have made default, and the cause may proceed or be postponed as to the others. Appellants did not request the court to award to them an interlocutory default judgment against the non-answering defendant Swinney, but proceeded to trial in the ordinary fashion. The record reveals that Swinney appeared in person and participated in the trial of the lawsuit, though not represented by an attorney. He was called by appellants to testify as an adverse party. Appellants' failure to demand an interlocutory default judgment against Swinney was acknowledged by appellants' attorney during the trial of the case. The case was submitted to the jury on issues relating both to Swinney and to the corporate defendant. The judgment recites that though Swinney was duly served, he did not file an answer, but did

appear in person, though not represented by counsel. Under the peculiar circumstances evident in this record we are of the opinion that appellants waived their right to demand a default judgment against Swinney.

In 33 Tex.Jur.2d, § 126, Page 647, the rule is announced:

> "By proceeding to trial without taking advantage of the defendant's failure to answer the plaintiff waives his right to a default judgment."

Our court had occasion to review the authorities on this question in Foster v. L. M. S. Development Co., Tex.Civ.App., 346 S.W.2d 387, wherein Chief Justice Dixon, speaking for this court, said:

> "Smith in person appeared, participated in the trial as a party, and gave his testimony. Even if no written answer of any kind had been filed in his behalf, appellants under the circumstances have waived their right to take advantage of his failure to file a written answer. Shaw v. Whitfield, Tev.Civ.App., 35 S.W.2d 1115; Guaranty State Bank v. Brill, Tex.Civ. App., 268 S.W. 260, 265; W. T. Rawleigh Medical Co. v. Mayberry, Tex. Civ.App., 193 S.W. 199; Rules 67 and 90, Texas Rules of Civil Procedure; 25 Tex.Jur. 393 and 401."

Having proceeded to trial without requesting an interlocutory default judgment, appellants impliedly consented to the procedure followed by the trial court, both in the introduction of evidence and the submission of issues to the jury, and hence any right to a default judgment was waived.

By their second and third points appellants contend that even though the jury found that the shooting of Nealy by Swinney was not wrongful and that Swinney was not acting in the course of his employment for the corporate defendant at the time he shot Nealy, the court should have awarded appellants judgment against appellee, Fi-

delity Union Life Insurance Company, based upon the jury's finding in response to Special Issues Nos. 3, 4, and 5 to the effect that such corporate defendant was negligent in failing to properly train its armed guard, Swinney, and that such negligence was a proximate cause of Nealy's death. They argue that the court was not justified in setting aside and disregarding the jury's answers to Issues 3, 4 and 5 in that even though the servant may be excused from liability the corporate master may be legally held liable for its failure to perform a nondelegable duty. Kirby Lumber Co. v. Chambers, 41 Tex.Civ.App. 632, 95 S.W. 607; Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S.W. 126, 26 L.R.A. 250; American Express Co. v. Parcarello, Tex.Civ.App., 162 S.W. 926; Fletcher v. Baltimore & Potomac R.R. Co., 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411, and Restatement of the Law of Torts and Negligence, Vol. 2, §§ 317 and 392.

The record contains testimony to the effect that at the time Swinney was employed by the Fidelity Union Life Insurance Company he was not given any special training as an armed guard. Even so we are of the opinion that the action of the trial court in setting aside and disregarding Issues 3, 4 and 5 was proper and that appellants' contention must be overruled for several reasons. First, we agree with appellee that Special Issues 3, 4 and 5 are immaterial under the facts of this record and the answers of the jury to such issues cannot support a judgment for appellants. The controlling issue, No. 3, inquired as to whether "defendant failed to properly train Earl Swinney as an armed guard." The testimony reveals that Swinney had been employed by the insurance company for eight years prior to the date of the shooting. The inquiry, therefore, concerned some failure on the part of the company to do something many years prior to the incident made the basis of this litigation. Moreover, the issue inquired as to Swinney's training as an armed guard and it necessarily follows that the act complained of by appellants against Swinney would have to flow from his act as

"an armed guard." The jury found that Swinney was not acting as an armed guard at the time he killed Nealy. The jury further found that Swinney was not acting wrongfully when he killed Nealy. Therefore, it is obvious that the jury finding concerning some failure on the part of the corporation to train Swinney as an armed guard becomes wholly immaterial inasmuch as the alleged wrongful act did not flow from any action on the part of Swinney while performing the duties as an armed guard. There is no evidence in this record of any other act committed by Swinney which would convey notice to the employer as to his alleged inefficiency as an armed guard. This fact added to the immateriality of the issues complained of, as reflected in the case cited by appellants, Fletcher v. Baltimore & Potomac R.R. Co., 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411, wherein the United States Supreme Court said:

"* * * negligence on the part of the company in failing to prevent the act could not probably be shown by proof of a single act of that kind, even though damage resulted, where there was nothing to show the company had any reason to suppose the act would be committed. Negligence on the part of the company is the basis of its liability, and the mere failure to prevent a single and dangerous act, as above stated, would not prove its existence."

■ See also Walton v. New York Central Sleeping Car Co., 139 Mass. 556, 2 N.E. 101, and Kelly v. Louisiana Oil Refining Co., 167 Tenn. 101, 66 S.W.2d 997. Such issues being immaterial to the ultimate liability of the corporate defendant, the trial court was justified in disregarding same. Whittenburg v. Miller, 139 Tex. 586, 164 S.W.2d 497; 41-B Tex.Jur., § 589.

■■ Another obvious reason why the trial court's action was correct is that even if it could be argued that Issues 3, 4 and 5 were material yet there is no evidence in this record to support the answer of the jury to Special Issue No. 5 to the effect that the failure to properly train Swinney as an armed guard was a proximate cause of Nealy's death. Even if it could be said that appellee owed a duty to properly train Swinney as an armed guard and that its failure to do so was negligence, yet such negligence could not, as a matter of law, be a proximate cause of Nealy's death unless the consequence of the negligence was reasonably foreseeable by the appellee. In Davidson v. Methodist Hospital of Dallas, Tex.Civ.App., 348 S.W.2d 400, we had occasion to review the case and to reiterate the rule that a party is only responsible for a consequence which is probable according to ordinary and usual experience. See also 17 Tex.Jur.2d § 14, "Death by Wrongful Act"; Hill v. Sabine Pipe & Supply Co., Tex.Civ.App., 272 S.W.2d 769. Moreover, it appears affirmatively in this case that a new and independent cause, in the form of Nealy's act and conduct, which will be hereinafter more fully discussed, intervened to destroy the causal connection between any negligence on the part of the employer and the ultimate act resulting in Nealy's death. For a review of the authorities dealing with this point see our opinion in Compton v. American Airlines, Inc., Tex. Civ.App., 348 S.W.2d 427; 40 Tex.Jur.2d, "Negligence", §§ 27 and 28.

Inasmuch as appellants' remaining points, 5 through 12 inclusive, are "no evidence" or "insufficient evidence" points assailing the jury's answers to Issues 1, 2 and 9, thereby requiring us to give careful consideration to the testimony as a whole, we deem it desirable to set forth the essential portions of such testimony dealing with these issues.

Willie Fred Nealy, prior to May 5, 1961, was an employee of the Fidelity Union Life Insurance Company as a porter. He had drawn his pay check just prior to the shooting on May 5, 1961 and there is evidence that he was no longer an employee at that time. Earl S. Swinney was an employee of Fidelity Union Life Insurance Company as an armed guard, having held that position for eight years prior to May 5, 1961, and on

the night of that date he was stationed in the lobby of the Fidelity Union Building performing his duties as such guard. Swinney was sixty-one years of age, five feet six inches in height, and weighed approximately 135 pounds. He had been disabled and was drawing twenty percent government disability due to an arthritic spine. His spine was stiffened or ossified and he also suffered pain in his left arm and shoulder for which he received treatment from time to time. His disability resulted in his inability to stand completely erect. Nealy was twenty-nine years of age, six feet tall, and weighed 185 to 190 pounds. He had an athletic build and was in good health. The shooting occurred in the lobby of the Fidelity Union Building. Swinney testified that he first saw Nealy around six P.M. when he took Nealy to the basement in the elevator. The next time he saw him Nealy was standing near a buffer in the hall near the lobby and at that time was loud and boisterous and using vulgar language. Swinney testified that he asked Nealy to quit using the filthy language and Nealy disappeared but later returned to the lobby where he again used loud, vulgar and profane language. Swinney again warned him about his conduct and Nealy disappeared but again returned to the lobby using profane and loud language and demanded that Swinney get his hat from a closet. Swinney went with Nealy to a wire closet, unlocked the door, and obtained Nealy's hat from the closet. While in the closet Nealy struck Swinney and knocked him against the wall. Swinney apparently tried to get away from Nealy and went up the hallway but Nealy followed him and grabbed him, dragging him out to the main lobby of the building. Swinney testified:

"Question: All right, then, you both turned and walked together; was he on your right or on your left?

"Answer: He was on my left.

"Question: All right, he would be on this side? (indicating). Now, let's walk straight down; we are going down the hall, now, and you walked here with him, Mr. Swinney (indicating); were any words spoken as you walked down that hall?

"Answer: He said, 'Give me my God damned hat.' "

\* \* \* \* \* \*

"Question: All right, and you unlocked the door?

"Answer: Unlocked the door—when I unlocked it, he hit me and knocked me against that back wall.

"Question: When you unlocked it?

"Answer: Yes.

"Question: And then did he reach in and get his hat?

"Answer: He got his hat with one hand and grabbed me and dragged me halfway up that corridor."

\* \* \* \* \* \*

"Question: Did he grab you halfway up the corridor?

"Answer: Yes, after he got me against the wall, he grabbed me again and dragged me both.

"Question: Out to the main lobby?

"Answer: Yes, sir.

"Question: Okey; did you break loose from him?

"Answer: I broke loose and he grabbed me again and I told him to leave me alone and stay away from me."

\* \* \* \* \* \*

"Question: All right, you were backing toward Pacific?

"Answer: That's right.

"Question: And he kept pursuing you, kept coming at you?

"Answer: Yes, sir.

"Question: And then what did you do?

"Answer: I shot him.

"Question: All right, did you have any argument at all about getting into that wire closet?

"Answer: No argument getting into it. The argument started over grabbing the hat and shoving me around."

*     *     *     *     *     *

"Question: (By Mr. Bickel) Now, then, about this disorder, he wasn't being disorderly at the time he came up to get his hat; was he directing his remarks to anybody except you, Earl Swinney—I mean when he came up to get the hat?

"Answer: When he come up to get the hat, it was directed at me.

"Question: And was the rest of his grabbing and following and everything like that directed to you, you alone, Earl Swinney?

"Answer: That's correct."

The only other witness to this incident was James O. Donaldson, also an employee, and a friend of Nealy. He testified he did not hear any profanity or cursing and did not see Nealy strike Swinney or drag him at any time. Upon cross examination he admitted he did not actually see everything that transpired prior to the time he heard the shot which killed Nealy.

The court submitted Special Issue No. 1 to the jury which inquired as to whether or not the shooting of Nealy by Swinney was wrongful. In connection with this issue the court gave to the jury a lengthy definition of the term "wrongful" which included the element of self defense and instructed the jury that if they believed that by the acts of Nealy it reasonably appeared to Swinney, viewed from his standpoint alone, that Nealy was then about to attack him in such a manner as to cause his death or serious bodily injury, or was reasonably calculated to create in the mind of Swinney a reasonable expectation or fear of death or serious bodily injury, that such killing would not be wrongful. The jury found that the killing was not wrongful. They also found in answer to Special Issue No. 2 that when Swinney shot and killed Nealy he was not acting as an employee of Fidelity Union Life Insurance Company, and in answer to Special Issue No. 9 that the act of Swinney in shooting Nealy was performed as a resentment of insults and in the furtherance of personal animosity of Swinney toward Nealy.

We have carefully considered this testimony, as well as the entire record, pursuant to the now familiar rule announced by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and having done so we cannot say that there is no evidence to support the jury's answers to the issues in question. Nor can we say that the answers of the jury to these issues were so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Accordingly, appellants' Points 5 through 12 inclusive, are overruled.

Finding no error demonstrated in this record we affirm the judgment of the trial court.

Affirmed.