Graciela B. DURAN, Appellant,

v.

FURR'S SUPERMARKETS, INC., d/b/a
Furr's Supermarket No. 939, and
Steve Romero, Appellees.

No. 08–95–00169–CV.

Court of Appeals of Texas,
El Paso.

April 4, 1996.

Rehearing Overruled May 1, 1996.

Evelina Ortega, Caballero & Ortega, L.L.P., El Paso, for appellant.

Mark C. Walker, Mounce & Galatzan, El Paso, E.K. Peticolas, Peticolas and Shapleigh, El Paso, for appellees.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

Graciela B. Duran (Duran), appeals from a summary judgment entered in favor of Appellees, Furr's Supermarkets, Inc. d/b/a Furr's Supermarket No. 939 (Furr's) and Steve Romero (Romero). We reverse and remand for trial.

### FACTUAL SUMMARY

Duran's causes of action against Furr's and Romero arose out of an incident which occurred in the parking lot of a Furr's supermarket. Duran alleges that Romero, an off-duty police officer working as a security guard for Furr's, became verbally abusive towards her when he asked her to move a vehicle in which she was a passenger from the fire lane located in front of the store. After moving the vehicle, Duran returned to where Romero was standing and asked Romero for his name. Romero walked over to the vehicle, opened the door, and while repeatedly threatening to arrest Duran, pulled and twisted on her left arm in an apparent effort to forcibly remove her from the vehicle. Duran suffered injuries to her arm which required surgery. She further alleges that the Furr's store manager watched the assault and did nothing to stop it. Romero, on the other hand, asserts that Duran became extremely upset and directed vulgar language at him because he asked her to move the car out of the fire lane. Romero admits opening the door to the vehicle and placing his hand on Duran's arm, but said that he did so only in an effort to calm her.

Alleging that Romero is an employee or agent of Furr's, Duran filed suit against Furr's for negligent hiring and supervision of Romero. She also made claims against

Furr's and Romero for assault and battery, false imprisonment, and defamation of character. The trial court granted Furr's and Romero's motions for summary judgment.

## STANDARD OF REVIEW

In Point of Error No. One, Duran contends that the trial court erred in granting summary judgment in favor of Furr's. The standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985); *Victory v. Bills*, 897 S.W.2d 506, 508 (Tex.App.—El Paso 1995, no writ); *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629, 631 (Tex.App.—El Paso 1992, no writ). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Victory*, 897 S.W.2d at 508.

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Victory*, 897 S.W.2d at 508; *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 721 (Tex. App.—El Paso 1991, writ denied). When the defendant is the movant and submits summary evidence disproving at least one essential element of each of the plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Victory*, 897 S.W.2d at 508; *Hernandez*, 832 S.W.2d at 633. Where the summary judgment order does not state the specific grounds on which

it was granted, the non-movant on appeal must show that each ground alleged in the motion is insufficient to support the granting of summary judgment. *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ).

## GENERAL GROUNDS FOR SUMMARY JUDGMENT

### Romero's Status as a Police Officer

Furr's moved for summary judgment on the ground that it cannot be held liable because the alleged acts of Romero were committed in his sole capacity as a police officer of the El Paso Police Department. Citing *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ) (*Half Price I* ), *Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559 (Tex.App.—Dallas 1996) (*Half Price II* ), and *City of Phoenix v. Industrial Commission of Arizona*, 154 Ariz. 324, 742 P.2d 825 (App.1987), Furr's argues that when Romero observed the vehicle illegally parked in the fire lane or saw Duran committing disorderly conduct by using vulgar language in a public place, Romero ceased being an independent contractor or employee of Furr's and acted solely in his capacity as a police officer. The summary judgment evidence does not support Furr's contention that a violation of law occurred, and Furr's authorities are thus distinguishable.[1]

Furr's first argues that parking in a fire lane is a violation of El Paso Municipal Ordinance 9.76.050. According to Furr's, Ordinance 9.76.050 states that "[i]t is unlawful to park any vehicle other than an authorized emergency vehicle in any fire lane established pursuant to this chapter." Furr's offered no summary judgment evidence to show that the fire lane in question is established pursuant to the Municipal Code. Thus, it failed to establish that a violation of

---

1. We note that in *Half Price II*, Leake claimed that a fact issue existed as to whether the officer actually saw a crime being committed. Concluding that Leake had not raised that contention in *Half Price I*, the Court declined to revisit their earlier opinion and applied the law of the case doctrine.

the Municipal Code occurred.[2] Further, in approaching Duran and asking her to move the vehicle, Romero was carrying out one of the functions for which he was hired, that is, handling parking violations in the store's parking lot. Since Romero did not issue a citation for the violation and admitted he had no intention to do so, whether Romero had ceased functioning in his capacity as an independent contractor or employee of Furr's at the time he asked Duran to move the vehicle is a question of fact.

 Furr's also argues that Romero ceased being an independent contractor when he observed Duran commit the offense of disorderly conduct. If Furr's is to succeed on this specific ground, it must establish that Romero had probable cause[3] to believe that Duran had committed or was committing a violation of Section 42.01(a)(1) of the Texas Penal Code[4] in his presence. *See De La Paz v. State*, 901 S.W.2d 571, 575 (Tex.App.—El Paso 1995, pet. ref'd)(an arrest, whether made with or without a warrant, must be based upon probable cause). Section 42.01(a)(1) applies only to "fighting words" which by their very utterance tend to incite an immediate breach of the peace as required by *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). *See Jimmerson v. State*, 561 S.W.2d 5, 7 (Tex.Crim.App.1978)(Section 42.01(a)(4) by implication applies only to fighting words); *Ross v. State*, 802 S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.) (Section 42.01(a)(1) applies only to "fighting words" and is not unconstitutionally vague); *Estes v. State*, 660 S.W.2d 873, 875 (Tex.App.—Fort Worth 1983, pet. ref'd)(Section 42.01(a)(1) and (a)(2) proscribe fighting words or acts in public places); Op. Tex. Att'y Gen. No. JM–900 (1988)(Section 42.01(a)(1) applies only to speech which as a matter of fact constitutes fighting words).

 Whether particular words are fighting words is a question of fact. *Chaplinsky*, 315 U.S. at 573, 62 S.Ct. at 770; Op. Tex. Att'y Gen. JM–900 (1988). The test is what a person of common intelligence would understand to be words likely to cause an average addressee to fight. *Gooding v. Wilson*, 405 U.S. 518, 523, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972); Op. Tex. Att'y Gen. JM–900. Speech punishable under Section 42.01 does not include language that is merely harsh and insulting. Op. Tex. Att'y Gen. No. JM–900, *see Gooding*, 405 U.S. at 525, 92 S.Ct. at 1107. Derisive and annoying words can be taken as coming within the purview of the statute only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. Op. Tex. Att'y Gen. No. JM–900, *quoting Gooding*, 405 U.S. at 522, 92 S.Ct. at 1106.

 Romero stated in his deposition that Duran called him "estupido" or "idiot" several times during this incident. Duran admitted that she told Romero as he twisted and pulled on her arm, "Let me go, estupido." The word "vulgar" as used in Section 42.01(a)(1) is not defined. Therefore, we apply its ordinary meaning. Tex.Gov't Code Ann. § 312.002 (Vernon 1988); *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex.1992). "Vulgar" is defined in Webster's New Collegiate Dictionary as: "offensive in language, earthy; lewdly or profanely indecent." Webster's New Collegiate Dictionary 1304 (1980). The language used by Duran does not appear to fall within the ordinary meaning of "vulgar." Moreover, Furr's did not

---

**2.** These same facts would not show that a violation of state law occurred. Section 684.011(a)(3) of the Texas Transportation Code prohibits the owner or operator of a vehicle from leaving a vehicle unattended on a parking facility that is in or obstructs an appropriately marked fire lane. Tex.Transp.Code Ann. § 684.011(a)(3) (Vernon Pamph.1996). Since Duran was in the vehicle and moved it when requested, it obviously was not left unattended by the owner or operator.

**3.** Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information

are sufficient in themselves to warrant a person of reasonable caution in the belief that a particular person has committed or is committing an offense. *Torres v. State*, 868 S.W.2d 798, 801 (Tex.Crim.App.1993); *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991); *De La Paz*, 901 S.W.2d at 575.

**4.** A person commits an offense if he intentionally or knowingly uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace. Tex.Penal Code Ann. § 42.01(a)(1) (Vernon 1994).

offer any summary judgment evidence which tends to show that the words spoken by Duran would be words likely to cause an average addressee to fight. Therefore, Furr's failed to establish as a matter of law that the facts known to Romero are sufficient in themselves to warrant a person of reasonable caution in the belief that Duran had violated Section 42.01(a)(1).

Focusing on Romero's duty as a peace officer to "preserve the peace," *see* Tex.Code Crim.Proc.Ann. art. 2.13 (Vernon 1977), Furr's next argues that Romero was functioning solely as a police officer during his confrontation with Duran because he was attempting to quell a breach of the peace, and the matter did not expressly concern store security. When taken in the light favorable to the non-movant, the summary judgment evidence reflects that Romero was the aggressor in the incident and he committed a breach of the peace by assaulting Duran. Whether Romero was attempting to quell a breach of the peace is a question of fact. Moreover, Romero was hired by Furr's to deter crime in the parking lot, work with the store's customers, and assist management. Whether these duties include quelling a disturbance that does not rise to the level of a criminal offense is a question of fact. Because fact issues exist with respect to whether Romero acted solely as a police officer, and not as an independent contractor or employee of Furr's, summary judgment on this ground is improper.

### Independent Contractor/Employee Status

Furr's next moved for summary judgment on the ground that Romero is an independent contractor, rather than an employee or agent of Furr's, and it is not vicariously liable because it retained no control over the work to be performed by Romero. The right of control is an issue in determining whether Romero is an employee or independent contractor, and if he is an independent contractor, whether Furr's is vicariously liable.

Under Texas law, an independent contractor is one "who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Pitchfork Land and Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961); *Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 220 (Tex.App.— Houston [14th Dist.] 1994, writ denied). The standard tests for determining whether one is acting in the capacity of an independent contractor measure the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591 (Tex. 1964); *Hoechst Celanese Corp.*, 899 S.W.2d at 220. In determining whether a person is an employee or an independent contractor, a court is required to examine a number of factors, including (1) the independent nature of the contractor's business; (2) his obligation to supply necessary tools, supplies, and materials; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) the method by which he is paid, whether by the time or by the job. *Pitchfork Land and Cattle Co.*, 346 S.W.2d at 603; *Hoechst Celanese Corp.*, 899 S.W.2d at 220. The most fundamental of these factors, however, is the right of control. *See Ross v. Texas One Partnership*, 796 S.W.2d 206, 210–11 (Tex.App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). Where there exists no dispute about the controlling facts and only one reasonable conclusion can be inferred, the question of whether one is an "employee" or "independent contractor" is a question of law. *Crow v. TRW, Inc.*, 893 S.W.2d 72, 78 (Tex.App.—Corpus Christi 1994, no writ); *Sherard v. Smith*, 778 S.W.2d 546, 548 (Tex.App.—Corpus Christi 1989, writ denied).

The general rule is that an owner of premises is not liable for harm arising out of activity conducted by, and under the control of, an independent contractor. *Ross*, 796 S.W.2d at 209; *see Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Sanchez v. Mbank of El Paso*, 792 S.W.2d 530, 531 (Tex.App.—El Paso 1990), *aff'd*, 836 S.W.2d 151 (Tex.1992). The doctrine of respondeat superior is not applicable in such a situation. *Ross*, 796 S.W.2d at 209; *Phillips Pipe Line*

*Co. v. McKown,* 580 S.W.2d 435, 438 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.). The employer in an independent contractor relationship may be liable when he retains the right to control the contractor's work but fails to exercise his retained control with reasonable care. *Exxon Corp.,* 726 S.W.2d at 20; *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985).

The summary judgment evidence established that Romero had worked as a security guard at Furr's Supermarket since early 1992.[5] He filled out an application at the police station, but never spoke with anyone at Furr's before he began working there. Jorge Ortiz, a sergeant with the El Paso Police Department, testified that the police department sets a minimum rate of $13 per hour with a minimum of two hours guaranteed work for patrol officers who provide off-duty security services for businesses. Romero said that Furr's paid him $12 per hour and paid him by check mailed to his home address. Xavier Lucero, an employee of Furr's, said that the first time he met Romero he instructed him to be visible in the front of the store, deter crime, work with the customers and make them feel secure, assist management when needed, and "if you have to act as police officer we're out of it." When asked whether he ever talked to anyone in management about how he was supposed to handle his job at Furr's, Romero testified that he had spoken with a manager when he first started working at Furr's. According to Romero, Furr's instructed him where he was to perform his job, told him to make his presence known and to use his expertise as a police officer in handling situations. He said that Furr's relied upon his expertise as a police officer in "handl[ing] any situation."

Both Romero and the store manager testified to a subjective believe that Romero was an employee of Furr's. Prior to his employment by Furr's, Romero signed a waiver provided by the City of El Paso which stated that he and/or his employer would be respon-

sible for his conduct while employed in an off-duty job. While there is summary judgment evidence showing that Furr's did not retain control over Romero's work insofar as it generally concerned arresting individuals, Duran offered summary judgment evidence showing that Romero asked Jose Encerrado, the store manager, whether he wished to have Duran arrested. Duran said that Encerrado shook his head, indicating "yes" to that question. This is some evidence that Furr's retained control over the decision to arrest an individual. Further, Encerrado testified that he would interfere if he saw a security guard verbally abusing or mistreating a patron of the store because he "was in charge." Thus, Furr's retained control over Romero with respect to how he treated patrons of the store. Because there is some evidence that Furr's retained control over the performance of security work by Romero, a fact issue exists with respect to whether Romero was an employee or independent contractor, and if he is an independent contractor, whether Furr's is vicariously liable. The existence of these fact issues precludes summary judgment on this ground.

### Inherently Dangerous/Personal Character Exceptions

■ Assuming that Romero is an independent contractor, Furr's next argued that it is not vicariously liable for Romero's actions as an independent contractor because the personal character and inherently dangerous exceptions to non-liability do not apply. Because we find that fact issues exist with respect to whether the personal character exception to non-liability applies, it is unnecessary to address the inherently dangerous exception.

■ The personal character exception to non-liability provides that a premise occupier or owner is not immune from liability where the work involves duties which are personal in character. If the duties being carried out

5. In the motion for summary judgment, and in its brief on appeal, Furr's refers extensively to the deposition testimony of Xavier Lucero to establish that Furr's did not retain control of the police officers it employed to perform off-duty security services. Although other portions of Lucero's deposition are included in the appellate record, the portions pertaining to the hiring process and the officers' relationship with Furr's are not included. Therefore, the omitted portions have not been considered.

by an independent contractor are of a personal character owed to the public by one adopting measures to protect his property, owners and operators of enterprises cannot, by securing special personnel through an independent contractor for the purpose of protecting property, obtain immunity from liability for at least the intentional torts of the protecting agency or its employees. *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.,* 542 S.W.2d 882, 888 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

In *Dupree,* the store contracted with the private firm of Denco Security Systems to protect the store's property from shoplifters. Two security guards employed by Denco accused Dupree of shoplifting and filed criminal charges against her although she had a sales receipt showing that she had purchased the items earlier in the day, and said that she had returned to the store to make an exchange. Upon dismissal of the criminal charges against her, Dupree filed suit against Piggly Wiggly for false imprisonment. Piggly Wiggly defended on the ground that Denco was an independent contractor. The court of appeals held that an owner or operator of an enterprise may not employ or contract with a special agency or detective firm to ferret out the irregularities of its customers or employees and then escape liability for malicious prosecution or false arrest on the ground that the agency and or its employees are independent contractors. *Dupree,* 542 S.W.2d at 889. Public policy considerations require that the enterprise be held liable for the acts done by others to its patrons in the prosecution of its business. *Id.* The Court noted that cases adopting this policy have been founded on the principle that an individual who expects to derive advantage from an act which is done by another for that individual, must answer for any intentional injury which a third party may sustain from it. *Id.* Consequently, the Court determined that the task of protecting the store's property was personal in nature, and as such, was a nondelegable or nonassignable duty. *Id.* at 890.

Furr's contends that the personal character exception applied in *Dupree* should not be extended to the instant case because the incident of which Duran complains did not arise out of Romero's protection of the property of Furr's, but rather, arose out of Romero's enforcement of the law as a police officer. First, we disagree with Furr's that *Dupree* is distinguishable because the function being performed by Romero is not personal in character. Furr's hired Romero to protect its own property as well as that of its customers, to protect the well-being of the store's patrons, and to deter crime both inside the store and in the parking lot. Romero said that one of his duties at Furr's was to handle parking violations. As was the case in *Dupree,* Furr's would obviously benefit from Romero's efforts to protect its own property. It cannot be disputed that Furr's efforts to protect its customers and their property from the criminal acts of others also inures to Furr's benefit because shoppers will be more likely to return to a business in which they feel secure. We find that the exception applied in *Dupree* is equally applicable where, as here, a business undertakes to protect, in addition to its own property, the property and well-being of its patrons because the business benefits both directly and indirectly from the security work performed for it by others. Consequently, Furr's has a duty to protect its customers from the intentional torts done by its security guards in the performance of that work. Whether Romero was engaged in the performance of his function as a security guard for Furr's is a question of fact. Second, as we have already determined, Furr's failed to establish that Duran had committed a violation of law. Therefore, we cannot conclude, as a matter of law, that Duran's injuries arose out of Romero's enforcement of the law rather than out of Romero's performance of his duties as a security guard for Furr's. For these reasons, it cannot be determined that the personal character exception does not apply. Consequently, summary judgment on this ground is improper.

### Non-liability for Exemplary Damages

Furr's next argued that it is not liable for exemplary damages based upon Romero's acts because: (1) an employer-employee or an agency relationship does not exist; and (2) vicarious liability under one of the exceptions to non-liability for the acts of

an independent contractor does not include exemplary damages. Furr's again asserts that the summary judgment evidence established Romero's status as an independent contract as a matter of law. As we have previously held, a fact issue exists in that regard. Therefore, these grounds would not support summary judgment.

### Non–Ratification of Romero's Unauthorized Acts

Furr's also argued that it is not vicariously liable for exemplary damages because Romero's actions were unauthorized acts that do not bind Furr's and Furr's did not ratify or approve of these acts. Generally, a principal is not bound by the conduct of his agent when the agent acts in excess of the actual authority given to him unless (1) the principal ratifies those actions, or (2) something estops the principal from denying the authority of those actions. *Longoria v. Atlantic Gulf Enterprises, Inc.*, 572 S.W.2d 71, 77 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd. n.r.e.). Further, a principal or master is liable for exemplary or punitive damages because of the acts of an agent only if: (1) the principal authorized the doing and the manner of the act; or (2) the employer or agent was reckless in employing him; or (3) the employer or agent was employed in a managerial capacity and was acting in the scope of the employment; or (4) the employer or manager of the employer ratified or approved of the act. *Purvis v. Prattco, Inc.*, 595 S.W.2d 103, 104 (Tex.1980); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 926 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.).

We find that material issues of fact exist with respect to both of these rules. First, whether Romero acted within the scope of his authority as a security guard or acted solely in his capacity as a police officer is a question of disputed fact. Second, there is evidence that Romero, while he was physically restraining Duran, asked the store manager whether he wanted Duran arrested, and the store manager indicated "yes" by nodding his head. The store manager did nothing to prevent or stop Romero from assaulting Duran. This evidence raises a fact issue

as to whether Furr's ratified or approved Romero's actions, or whether Furr's authorized the doing and the manner of the act by Romero. Accordingly, these grounds would not support the summary judgment.

### NEGLIGENT HIRING CLAIM

With respect to the negligent hiring claim, Furr's moved for summary judgment on the grounds that: (1) Furr's actions were not a proximate cause of Duran's injuries; (2) Duran's actions constituted a new and independent cause that severed any causal link between any alleged negligent acts of Furr's and Duran's injuries; (3) Duran was a trespasser; and (4) Romero was justified in his use of force as a matter of law.

### Proximate Cause

The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others. *Peek v. Equipment Services, Inc.*, 906 S.W.2d 529, 534 (Tex.App.—San Antonio 1995, no writ h.); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.App.—Tyler 1979, writ ref'd n.r.e.). In order to impose liability upon an employer under the doctrine of negligent hiring, there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant or independent contractor and be, in some manner, job-related. *Peek*, 906 S.W.2d at 534; *Dieter v. Baker Service Tools*, 739 S.W.2d 405, 408 (Tex.App.—Corpus Christi 1987, writ denied). Stated another way, negligence in hiring the employee or independent contractor must be the proximate cause of the injuries to the plaintiff. *Peek*, 906 S.W.2d at 534; *Dieter*, 739 S.W.2d at 408. The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, without which the harm would not have oc-

curred. *Id.* at 477. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *Id.* The foreseeability element of proximate cause requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Id.* at 478. The precise injury that occurred need not have been foreseen, only that it be of such a general character as might reasonably have been anticipated. *Nixon,* 690 S.W.2d at 551. To sustain the summary judgment, the evidence must have been sufficient to establish, as a matter of law, that Furr's negligence was not a proximate cause of the harm alleged by Duran. *See Lear Siegler, Inc.,* 819 S.W.2d at 471.

▇▇▇ The summary judgment evidence showed that Furr's did not require Romero to complete a job application and otherwise made no inquiry into his background as a police officer. Furr's never interviewed Romero or spoke with him before he began working at the store. If Furr's had conducted an investigation of Romero's performance as a police officer, it would have learned that Romero had a prior complaint for using vulgar and abusive language towards a member of the public while on duty as a police officer. Duran argues that this complaint demonstrates Romero's propensity for aggressive behavior so that Furr's could have reasonably anticipated that Romero might verbally and physically abuse a patron of the store. On the other hand, Furr's argues that even if it had discovered the prior complaint, the information would not have caused Furr's to reasonably anticipate his physical assault upon Duran. In attempting to distinguish between the prior verbal abuse complaint and the physical assault upon Duran, Furr's ignores the summary judgment evidence showing that Romero first verbally abused Duran during this incident. According to Duran, the verbal abuse escalated into the physical assault. We find that a fact question is raised whether knowledge of this abusive language complaint would put a reasonable person on notice that Romero might verbally abuse a store patron, and that such conduct might escalate into a physical assault. Because of the existence of this fact

issue, summary judgment on this ground is improper.

### Duran's Acts as New and Independent Cause

▇▇▇ Asserting that Duran was verbally and physically aggressive towards Romero, Furr's also contended that Duran's actions constituted a new and independent cause that severed any causal link between the alleged negligent acts of Furr's and Duran's injuries. Furr's cites *Nealy v. Fidelity Union Life Ins. Co.,* 376 S.W.2d 401, 404 (Tex.Civ.App.—Dallas 1964, no writ) in support of its argument. The term "new and independent cause" means the act or omission of a separate and independent agency that destroys the causal connection between a negligent act or omission of the defendant and the injury complained of, and thereby becomes in itself the immediate cause of the injury. *Phoenix Refining Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *Cook v. Caterpillar, Inc.,* 849 S.W.2d 434, 440 (Tex. App.—Amarillo 1993, writ denied); *Eoff v. Hal and Charlie Peterson Foundation,* 811 S.W.2d 187, 192 (Tex.App.—San Antonio 1991, no writ). Such cause contemplates that an independent force rather than the negligent acts of the parties was responsible for such injuries. *Eoff,* 811 S.W.2d at 192–93.

The instant case is easily distinguishable from *Nealy.* There, a security guard shot and killed the decedent after he repeatedly and aggressively attacked the guard. The Court held that the decedent's physically aggressive acts constituted a new and independent cause of his death because he forced the security guard to use deadly force in self-defense. *Nealy,* 376 S.W.2d at 404–06. Here, there is no evidence that Duran was physically aggressive towards Romero or that Romero's use of force against Duran was justified as a matter of self-defense. The evidence, when taken in the light favorable to Duran, demonstrates that Romero was the aggressor. By arguing that Duran was verbally aggressive towards Romero, Furr's necessarily takes its own summary judgment evidence as true and disregards the remainder of the evidence. The summary judgment evidence shows that Duran

became agitated only after Romero yelled at her and used profanity towards her. Thus, whether Duran was "verbally aggressive" towards Romero is disputed. Furr's has failed to establish this ground for summary judgment as a matter of law.

### Duran's Status as a Trespasser

■ Furr's also moved for summary judgment on the basis that Duran, an invitee of the business, exceeded the limits of her authority as an invitee when she began using loud, abusive, and profane language, and became a trespasser when she was asked to leave, but refused to do so. Although there is evidence that Romero asked Duran to move the van out of the fire lane, there is no evidence that anyone, including Romero, asked her to leave the premises. As we noted earlier, there is no evidence that Duran used vulgar or profane language. Because Furr's failed to establish that Duran was a trespasser as a matter of law, summary judgment on this ground is improper.

### Justification in Use of Force

■ Relying upon Section 9.51 of the Texas Penal Code, Furr's argues that Romero was justified in the use of force as a matter of law. *See* TEX.PENAL CODE ANN. § 9.51(a)(1), (2) (Vernon 1994). By its very language, Section 9.51(a) applies only to situations in which the peace officer is attempting to effectuate the arrest of an individual. At best, whether Romero touched Duran in an effort to effect her arrest is a fact issue. Duran stated that Romero grabbed her arm while threatening to arrest her. Romero stated he did not intend to arrest Duran and touched her only in an effort to calm her. The undisputed evidence shows that Romero eventually walked away from the conflict and did not arrest Duran. Because of the existence of these fact issues, Furr's failed to conclusively establish justification under Section 9.51.

### *FALSE IMPRISONMENT CLAIM*

With respect to the false imprisonment claim, Furr's moved for summary judgment on the grounds that: (1) the statute of limitations had run at the time the amended petition was filed; and (2) there was no detention, or alternatively, Romero had authority to stop and question Duran.

### Statute of Limitations

■ The incident in question occurred on March 28, 1992. Duran's original petition did not contain a false imprisonment claim. More than two years after the incident, she amended her petition to allege a false imprisonment claim. Furr's moved for summary judgment with respect to this claim on the ground that it is barred by the statute of limitations, arguing that because the claim is wholly based on a new, distinct, or different transaction or occurrence, the filing of the original petition did not toll the running of the statute of limitations.

Texas Civil Practice & Remedies Code, Section 16.068 governs application of the statute of limitations in situations such as this. *Dillard's Dept. Stores, Inc. v. Strom,* 869 S.W.2d 654, 658 (Tex.App.—El Paso 1994, writ dism'd by agr.). It provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

■ When an amended pleading sets up a new cause of action under Section 16.068, it will relate back to the date of the original pleading for the purposes of limitations, so long as the amended pleading does not allege a wholly new, distinct, or different transaction. *Ex parte Goad,* 690 S.W.2d 894, 896–97 (Tex.1985); *Strom,* 869 S.W.2d at 658; *Dorney v. Henderson Clay Products, Inc.,* 838 S.W.2d 314, 316 (Tex.App.—Texarkana 1992, writ denied). Here, the amended claim does not allege a wholly new, distinct, or different transaction. Both the earlier and later claims involve the same wrongdoer and the

same event. Furr's argument in this regard is without merit and does not support summary judgment.

## No Detention/Detention Authorized by Law

 Furr's next argues that no detention occurred, or alternatively, Romero was authorized to detain Duran and question her. The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985). Furr's arguments concern the first and third elements of false imprisonment.

Furr's first asserts that the summary judgment evidence establishes that Romero did not detain Duran. To the contrary, Duran stated that Romero opened the door to her van, grabbed her arm, twisted it, and would not let go. She also stated that he attempted to pull her from the vehicle. This evidence creates a fact issue as to the element of detention. With respect to the third element, Furr's argues that Romero had authority to arrest Duran for the parking violation. As discussed previously, Furr's failed to establish as a matter of law that Duran had committed or was committing a violation of law. Thus, it did not conclusively establish that Romero had authority to arrest Duran. Alternatively, Furr's argues that Romero had authority to temporarily detain Duran for further investigation with respect to the disorderly conduct violation. We disagree for two reasons. Inasmuch as Duran testified that Romero was pulling and twisting violently on her arm in an effort to forcibly remove her from the vehicle, while asking Encerrado whether he wished to have her arrested, a fact issue exists whether this type of restraint in fact constituted an arrest rather than an investigative detention. *See Amores v. State*, 816 S.W.2d 407, 411–12 (Tex.Crim.App.1991) (Court found that arrest, not detention, occurred when police officer blocked the appellant's car in the parking lot, drew his service revolver, ordered the appellant from his car at gunpoint, ordered him to lie face-down on the pavement with his hands behind his back, and told him he would be shot if he did not obey these orders); *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Crim.App.1987) (detention constituted a warrantless arrest rather than an investigative detention where the police officers removed the defendant from his car at gunpoint, took him to the rear of the car and gave him Miranda warnings). Additionally, Furr's has not pointed to any evidence showing as a matter of law that Romero had a reasonable suspicion, based on specific, articulable facts, that Duran was involved in criminal activity. *See Gaines v. State*, 888 S.W.2d 504, 508 (Tex.App.—El Paso 1994, no pet.). Because of the existence of these facts issues, summary judgment is improper.

## *DEFAMATION CLAIM*

 Duran alleged that Romero's statements to her and his conduct were defamatory because they imputed the commission of a crime and exposed to her public ridicule. Furr's moved for summary judgment on the grounds that: (1) Romero's statements to Duran are not defamatory and are not slanderous per se because they do not falsely impute criminal conduct; (2) the statements are true; and (3) the statements are privileged under the First Amendment. To be entitled to a summary judgment, Furr's had the burden to prove that Romero's alleged statements were not defamatory or slanderous per se as a matter of law. *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex. App.—Corpus Christi 1989, no writ).

 Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. *Randall's Food Markets*, 891 S.W.2d at 646; *Diaz*, 777 S.W.2d at 498. A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon 1986); *Einhorn v. LaChance*, 823 S.W.2d 405, 410–11 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Musser v.*

*Smith Protective Serv., Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987); *Einhorn*, 823 S.W.2d at 411. The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Id.* Only when the court determines the complained of language to be ambiguous or of doubtful import should a jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary reader or listener. *Diaz*, 777 S.W.2d at 499; *see Musser*, 723 S.W.2d at 655. If a written or oral statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is libelous or slanderous per se. *Diaz*, 777 S.W.2d at 499; *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 334 (Tex.App.—Dallas 1986, no writ). In suits brought by private individuals, truth is an affirmative defense to slander. *Randall's Food Markets*, 891 S.W.2d at 646; *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, writ denied).

Although the surrounding circumstances in which Romero's words were spoken are controverted, Furr's does not dispute that Romero's threats to arrest Duran imputes criminal conduct to her. It argues, however, Romero's words did not *falsely* impute criminal conduct because Romero's statements that he was going to arrest Duran were true. Furr's argument is unpersuasive because the question is not whether Romero's statements are true because he actually intended to arrest Duran. Rather, the question is whether his statements falsely imputed criminal conduct to her. As we have noted throughout this opinion, Furr's has not conclusively established that Duran committed a violation of criminal law. This is true despite Romero's subjective belief that she had committed the offense of disorderly conduct. Further, Romero testified that he had no intention of arresting Duran. Therefore, at the very least, fact issues exist with respect to the falsity of Romero's statements. For this same reason, Furr's failed to establish its affirmative defense as a matter of law.

Finally, Furr's urges that Romero's statements in which he allegedly called Duran rude names and used profanity towards her are not defamatory and are absolutely privileged under the First Amendment. Although Furr's claims that Duran bases her defamation claim, in part, on these statements, neither the pleadings nor the summary judgment evidence support this contention.

For the foregoing reasons, none of the grounds raised by Furr's supports the granting of its motion for summary judgment. Point of Error No. One is sustained.

## QUALIFIED IMMUNITY

In Point of Error Two, Duran contends that the trial court erred in granting summary judgment in favor of Romero on the basis of qualified immunity. Romero moved for summary judgment as to all of Duran's claims against him on the ground that he is entitled to qualified immunity because he was performing a discretionary duty in good faith within the scope of his authority as a police officer. Qualified or official immunity is an affirmative defense. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Victory*, 897 S.W.2d at 508; *Half Price Books*, 883 S.W.2d at 376. To establish the defense, Romero must show that the disputed incident occurred while he was (1) performing discretionary duties, (2) in good faith, and (3) was acting within the scope of his authority. *Chambers*, 883 S.W.2d at 653; *Victory*, 897 S.W.2d at 508. The underlying purpose of official immunity is to free government officials to exercise their duties without fear of damage suits that would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. *Victory*, 897 S.W.2d at 508; *Tyrrell v. Mays*, 885 S.W.2d 495, 497 (Tex.App.—El Paso 1994, writ dism'd w.o.j.). When a party seeks summary judgment on an affirmative defense, it must prove conclusively all elements of the affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Half Price Books*, 883 S.W.2d at 376. No disputed question of material fact can remain on the affirmative defense. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990); *Half Price Books*, 883 S.W.2d at 376.

Romero states in his affidavit that he was acting in his capacity as a police officer during the incident in question because he asked Duran to move the illegally parked vehicle and he had reasonable grounds upon which to arrest her for disorderly conduct. As noted earlier, a fact issue exists whether Romero was acting in his capacity as a police officer when he asked Duran to move the vehicle. Further, despite Romero's subjective belief that he was acting in his capacity as a police officer during the incident in question, the summary judgment evidence does not conclusively establish that Duran committed a violation of law, including disorderly conduct. Consequently, Romero failed to establish as a matter of law that he was acting within the scope of his authority as a police officer during the incident in which Duran suffered the injury to her arm.[6] Because Romero failed to conclusively establish one of the elements of the affirmative defense of qualified immunity, the trial court erred in granting Romero's motion for summary judgment. Point of Error No. Two is sustained.

## CONCLUSION

Having sustained both points of error, we reverse the judgment of the trial court and remand the cause for trial.

---

6. *Compare City of Dallas v. Half Price Books,* 883 S.W.2d at 376–77 where an off-duty police officer working as a security guard observed two men removing a taillight from a parked car in an adjacent parking lot. As he attempted to stop them, the men got in a vehicle and attempted to flee. The officer removed the keys from the ignition, but began to struggle with the passenger. When the driver recovered the keys and started the vehicle, the officer dove across the seat in an effort to get the keys again. As the passenger was striking the officer, the driver began to move the vehicle. The officer then shot and killed the driver. The court concluded that when the officer saw a crime being committed, he ceased being an independent contractor or employee and was an on-duty police officer.